BAKER & TERRELL v. J. D. GUINN.

No. 46.

1. **Sale of Personal Property Complete.**—In contracts for sale of personal property, when everything agreed upon is done by the parties to the contract, in regard to the property, to ascertain the quantity and determine the price, the sale is complete and the title passes without actual delivery. When the price is susceptible of ascertainment by means of some criterion prescribed in the contract, so as to render future negotiations in regard to it unnecessary between the parties, it is sufficient, if the other requisites have been performed, to constitute a sale.    Hopkins v. Partridge, 71 Texas, 607.

2. **Misjoinder of Causes of Action.** — In an action for conversion of property, where plaintiff claims title by purchase, and in the same suit seeks to foreclose a mortgage lien on the same property, a foreclosure of the mortgage lien was wholly inconsistent with his claim of ownership.    The exception to the petition on that ground should have been sustained; and on failure to sustain the exception the court should have withdrawn the mortgage from the consideration of the jury by a proper charge.

3. **Jurisdiction.**—The amount in controversy, and not the amount found in the verdict of the jury, determines the jurisdiction of the court.    The amount claimed in the petition will be deemed the amount in controversy, and will determine the question of jurisdiction, unless it appear that the allegations were falsely and fraudulently made to give jurisdiction where it did not properly belong.    The value, and the damages from its seizure, constituted the amount in controversy.

APPEAL from the County Court of Guadalupe.    Tried below before Hon. JAMES GREENWOOD.

*Burges & Dibrell* and *W. R. Neal,* for appellants.—1.    The facts of the case do not show that there was a complete sale of the cotton by Wilson to Guinn, so as to vest in Guinn title to the same at the time it was levied upon under execution against Wilson.    Anderson v. Levyson, 1 W. & W. C. C., 927; Story on Sales, secs. 220, 296.

2.    To sue in the same cause for the conversion of property and to foreclose a mortgage on the same property against a third party, is a misjoinder of action; and Guinn having sued Baker & Terrell for the full

value of certain cotton alleged to have been by them converted, had no right in the same suit to sue Wilson for a foreclosure of a mortgage on said property.

3. The finding of the jury was less than the jurisdictional amount of the County Court. The property mentioned in the mortgage from Wilson to Blanks was no test of the jurisdiction of the court, as the amount in controversy was the value of the cotton alleged to have been converted by Baker & Terrell.

*J. D. Guinn*, for himself.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellee, in the County Court of Guadalupe County, against the appellants, to recover the value of four bales of cotton, weighing 2040 pounds, alleged to be worth $204, and to be the property of appellee. It was alleged, that appellants, knowing the cotton to be the property of appellee, unlawfully seized and converted it to their use, and that such seizure was maliciously and oppressively made, with the knowledge on the part of appellants that thereby appellee would be put to a great trouble, loss of time, and expense.

Appellee alleged, also, that he purchased the property from George Wilson, and at the time it and other property was encumbered by a mortgage given by Wilson to secure J. M. Blanks in the payment of $40.90, the payment of which was assumed by appellee at the time of his purchase, and the mortgage assigned to him by the mortgagee, and that the property mortgaged was worth $400. Wilson answered in the case, admitting the debt to Blanks and the execution of the mortgage to secure it.

The appellee prayed judgment for the value of the property converted, for $25 attorney fees, $50 loss of time, $500 exemplary damages, and for a foreclosure of his alleged mortgage on the property as against Wilson.

The appellants in their answer plead to the jurisdiction of the court, averring that the allegation of the value of the cotton made by appellee was fictitious and false, and that it was fraudulently made for the purpose of giving the County Court jurisdiction; that in fact the cotton was not at the time of its conversion, nor at any time since, worth exceeding $200, and that the other items of damages were alike false, and fraudulently alleged. The appellants specially excepted to the allegations of appellee as to the mortgage made by Wilson to Blanks, and moved to strike them out, upon the grounds of irrelevancy, and that suit could not be maintained on the mortgage without making Wilson a party. Many other exceptions were made by appellants to the pleadings, but as the action of the court on them is not assigned as error, it is not necessary for us to specify them. Appellants then interposed a general denial, and a special plea that the alleged sale of the cotton by Wilson to appellee was made for the purpose of defrauding his creditors.

The case was tried by a jury, who rendered a verdict in favor of plaintiff for the sum of $175.40 principal and $31.90 interest against Baker & Terrell, and in favor of plaintiff against Wilson in the sums of $40.96 principal and $8.63 interest, and decreed a foreclosure of said mortgage, upon which verdict the judgment from which this appeal is prosecuted was rendered.

Appellants' first assignment of error is as follows: "The court erred in refusing to grant a new trial, because the facts and circumstances in evidence conclusively showed that the sale of the cotton by Wilson to Guinn was incomplete, and did not pass the title, for the reason that the buyer and seller did not expressly stipulate that the title should pass at the time of the contract of sale, and there remained something to be done by both buyer and seller, viz., Wilson was to finish gathering the cotton and haul all the cotton to the gin, and was to get the best offer for the cotton he could obtain, in order to determine the price, the stipulated price being ¼ or ½ a cent per pound more than any one else would give; and the buyer was to take up a mortgage on the cotton held by Blanks, and when the quantity and quality of the cotton was ascertained, and Wilson had obtained the best offer procurable, Guinn was to allow Wilson ¼ or ½ a cent a pound more than such offer, and credit this amount on the land note executed by Wilson to Guinn."

Their second assignment is: "The court erred in refusing the special instruction asked by defendants, as follows: 'A sale is not completed while anything remains to be done to determine its quantity, if the price depends on this, unless this is to be done by the buyer alone. No sale is complete, so as to vest in the vendee an immediate right of property, so long as anything remains to be done between the buyer and seller in relation to the property sold.' Because this special instruction was the law applicable to the facts proven, and was not embraced in any of the charges given; and when anything remains to be done for the purpose of ascertaining the price, the performance of this is a condition precedent to the transfer of the property, although the individual goods be ascertained and they are in a state in which they ought to be accepted."

The testimony relating to the first assignment of error is, substantially: That in the fall of 1888 George Wilson was indebted to the appellee in the sum of $1000, evidenced by his promissory note, secured by a vendor's lien on the land upon which Wilson then resided; that in the fall of that year appellee visited Wilson at his place and demanded payment of his debt, saying that he must have something on it, or he would foreclose his lien; that Wilson not being able to pay anything, the following agreement was made between the parties, viz.: Appellee agreed to buy Wilson's crop of cotton and pay ¼ or ½ cent per pound more for the cotton than anybody else would give, and credit Wilson with the proceeds on his note. Wilson agreed that appellee should have the cotton which

had been gathered and all in the field, estimated at four or five bales, upon the terms agreed on by appellee. At that time there were two or three bales gathered and on the premises. It was further agreed between the parties, that Wilson should pick the balance of the cotton and haul it to Schultz's gin, and leave it there in Schultz's charge, to be held by him subject to appellee's order. That Wilson was to have nothing further to do with the cotton after it was delivered to Schultz. In pursuance of the above agreement, Wilson picked the balance of the cotton and hauled it all to said gin and delivered it to Schultz for appellee, at the same time notifying Schultz that he had sold the cotton to appellee, and to hold it subject to Guinn's order. The cotton was ginned and baled, the bales weighing 2040 pounds, and while at the gin was levied upon by virtue of an execution issued on a judgment in favor of appellants against Wilson, as Wilson's property. Schultz held the cotton as Guinn's from the time it was delivered until it was levied on, and then notified the officer making the levy that it was appellee's property, and that he held it for him. While the cotton was at the gin and before the levy, Wilson was offered 10 cents per pound for it. and told the parties making the offer that it was Guinn's. Appellee credited Wilson's note with the cotton at a valuation of 10½ cents per pound. This credit was not entered until after the levy, for the reason that up to that time Guinn did not know the weight of the cotton nor the price Wilson had been offered for it.

The part of the court's general charge relating to the second assignment of error is: "The plaintiff claims the cotton in controversy by purchase from George Wilson prior to the alleged conversion by defendants. There is a difference between a sale of personal property and an agreement to sell. Under an agreement to sell, no title passes; but whenever parties have agreed upon the terms of sale, and the property sold is identified, and nothing remains but to deliver it, and if it appears from the evidence that the parties understood and intended the title to pass without actual delivery at the time of said sale, then the title will pass without such delivery; but when anything remains to be done by way of selecting out or separating the property from other property of the same kind, for purposes of identifying the property sold, then no title passes until the property has been selected and identified." At the request of appellants the court also instructed the jury, that "an ordinary test of ownership is, whose loss would it have been if the property at the given time had been destroyed by fire or otherwise; the party who would have to bear the loss would be the owner."

While it may be that the title to the cotton may not have vested in appellee at the time the agreement was made between the parties on Wilson's place, on account of there being something to be done by Wilson under the terms of the contract in relation to the cotton, necessary to

complete the sale, the question as to whether the title to it passed to appellee at that time is not conclusive of his rights. If the title passed by the agreement, and what was done in pursuance of it, before it was converted by appellants, appellee had the right to recover from them the property or its value. There is no doubt about there being a sufficient considerato support the contract, and that both parties had the right, as between themselves, to carry it into effect. Wilson, as he agreed to, picked the balance of the cotton, hauled it to the gin, delivered it to Schultz as the property of appellee, received an offer of 10 cents per pound for it after it was ginned and its weight ascertained. The cotton was held by Schultz as appellee's property and subject to his order, and notice given the officer of these facts at the time of its seizure. So Wilson had done everything required of him to pass the title to appellee, and to entitle him to a credit on the note of at least $10\frac{1}{4}$ cents per pound for 2040 pounds of cotton; and if appellee had refused to enter the credit at any time after the weight was ascertained and the offer of 10 cents made for the cotton, Wilson, by a proper proceeding, could have compelled the entry of the credit, or have, if sued on the note, offset it to the amount of the credit that he was entitled to under the contract. The appellee had the same right to the cotton that Wilson had to have the credit entered on the note, and the fact that under the contract he may have had the option of paying $\frac{1}{4}$ or $\frac{1}{2}$ of a cent per pound more than Wilson's offer of 10 cents, would not deprive him of the right. If Wilson was satisfied with the price as fixed, no one else had any right to complain. The credit was placed on the note, estimating the cotton at $10\frac{1}{2}$ cents per pound, as soon as appellee ascertained the weight and the price offered Wilson for it. True, this was done after the seizure under execution, but Wilson's right to have it done had attached before, and consequently appellee's right to the property.

In the case of Hopkins v. Partridge, 71 Texas, 607, Quash Reed owed Partridge for a tract of land, who held his (Reed's) notes given in consideration for the land. All the notes were past due. Partridge went to where Reed was gathering cotton in the field. A part of the cotton had been picked, some of which was stored in Reed's cotton pen in the field, and some in his smoke house on the farm. Partridge bought all the cotton in the pen and smoke house, as well as that ungathered, and promised to give Reed the market price for the cotton at Pittsburg. The cotton was at that time worth 7 cents per pound in Pittsburg, Texas, but that was not agreed on by the parties. Reed accepted Partridge's proposition, and then and there sold him said cotton, and agreed to pick out the balance and haul the same to Baily's gin. When it was hauled there and ginned, Partridge was to haul it to Pittsburg, where the same was to be weighed and the number of pounds and price ascertained in the market, and then give the proper credit on Reed's note. About four weeks after

this agreement was made, while the cotton was still in the pen, smoke house, and field, in the same condition, it was levied on by an officer in favor of Hopkins as Reed's property. It was assigned as error that the testimony did not show a complete sale of the cotton, (1) because the transaction did not include delivery of possession; (2) there was work to be done on the cotton, preparing for delivery; (3) no price was fixed, or could be, until after it was taken to market; (4) because the cotton being found in Reed's possession, was subject to attachment. The court held, that under the facts stated all the objections urged were satisfied, and that there was clearly a change of ownership. As to the price, the court said it could be ascertained with certainty. To constitute a sale, "The price need not be directly stipulated. The stipulation may be indirect and descriptive, as where it is agreed to be ' 10 cents a bushel less than the Milwaukee price on any future day the vendor might name.' In such a case, the title does pass before the naming of the day." Tied. on Sales, sec. 45. "When the price is susceptible of ascertainment by means of some criterion prescribed in the contract, so as to render future negotiations in regard to it unnecessary between the parties, it is sufficient, if the other requisites have been performed, to constitute a sale." Story on Sales, sec. 220.

The evidence to show a sale, and that the title to the property passed to the appellee before the seizure, was, in our opinion, sufficient to warrant the verdict, and there was no error in the court's refusing to grant appellants a new trial. Nor do we think there was any error in its refusal to give the special charge set out in their second assignment of error. It was not applicable to the facts in the case. If it had been, it was substantially given in the court's general charge. While the charge complained of in the third assignment is not strictly accurate, in that it is not full enough, it substantially presents the law arising from the facts as proven; and if deemed inaccurate by appellants, they should have asked a special charge fully presenting the law applicable to the case as developed by the testimony. If the agreement between appellee and Wilson, on the latter's place, did not constitute a sale, it was at least an executory contract of sale; and when everything was done in pursuance to the contract by Wilson that he agreed to do, the contract on his part was complete, and the sale became absolute, and the title passed to Guinn, who was, as we have seen, bound to credit Willson's note with the value of the cotton, estimated at $10\frac{1}{4}$ cents per pound, if he did not choose to credit it with the value of the cotton estimated at $10\frac{1}{2}$ cents per pound. Story on Sales, sec. 315.

The fourth, fifth, and seventh assignments of error all relate to the action of the court in foreclosing the mortgage on certain property, including that in controversy, given by Wilson to Blanks, and assigned by the latter to appellee. We think all these assignments are well taken. If appellee owned the property and the mortgage debt, a foreclosure of the

mortgage lien was wholly unnecessary and inconsistent with his claim of ownership. The exception to appellee's petition on that ground should have been sustained. And after the court failed to sustain it, it should have withdrawn the mortgage from the consideration of the jury, by giving the special charge asked by appellants. As the judgment on the debt secured by the mortgage was rendered only against Wilson, and the property was found to be appellee's, the error would not affect the appellants except as to costs (which could be revised and corrected under an order of this court); and we would not be required to reverse it, were it not for the fact that this error was the parent of another, which we consider fatal to the judgment.

The court instructed the jury, that the value of the property mentioned in the mortgage *was the test of jurisdiction*, and that if they believed the value of the property mentioned therein was over $200, the court had jurisdiction. The mortgage had no more relevancy to the case than the " white-backed brindle bull" described in it; and it would have been just as appropriate for the court to have instructed the jury, that the value of the court house of Guadalupe County was the test of jurisdiction, as it was to give the instruction it did. There was no question about the fact that the property described in the mortgage was worth over $200. Hence the effect of the charge was to withdraw appellants' plea to the jurisdiction of the court from the jury.

The failure of the court to set aside the verdict and dismiss the case for want of jurisdiction, because the verdict shows the value of the property to be less than $200, is also assigned as error. There is an unbroken line of authorities from Swigley v. Dickson, 2 Texas, 192, down to this case, holding that the amount of the verdict does not determine the question of jurisdiction, but that the question must be determined by the amount in controversy. The amount claimed by the plaintiff in his petition will be deemed the amount in controversy, and will determine the question of jurisdiction, unless it appears from the petition that the case is not within the jurisdiction, or unless it shall otherwise appear that the plaintiff, in framing his petition, has improperly sought to give jurisdiction where it did not properly belong.

In this case it is averred in appellants' plea to the jurisdiction, that the matter in controversy is less than $200, and that the amount alleged in plaintiff's petition is falsely and fraudulently made for the purpose of giving the County Court jurisdiction. It is apparent that some of the matters alleged as items of damages were not elements of damages in cases of this character, but the value of the property was alleged at over $200, and the alleged manner of its conversion was such as would entitle appellee to exemplary damages if established by the evidence, and if there was not sufficient evidence to entitle appellee to the exemplary

damages prayed for, it would not follow that the court was without jurisdiction of the subject matter. The matter in controversy was the alleged value of the property, and the alleged exemplary damages growing out of the manner of its conversion; and without it being shown that the value of the property and the manner of its conversion were fraudulently alleged for the purpose of giving jurisdiction where it did not belong, the court would have jurisdiction, though it should appear on the trial that the property was not worth $200, and that no exemplary damages were shown. A party does not invoke the jurisdiction of the court at his peril; if he acts fairly and honestly in making his allegations as to the amount in controversy, a court will in nowise cast him out because he has made a mistake as to the value of the subject matter in controversy. Dwyer v. Bassett, 63 Texas, 275; Graham v. Roder, 5 Texas,. 146; Railway v. Nicholson, 61 Texas, 551; Roper v. Brady, 80 Texas, 588.

For the reason that the court below erroneously permitted a mortgage to be foreclosed which had no relation to the issues in the case, and made the value of the property described in it the test of jurisdiction, its judgment is reversed and remanded.

*Reversed and remanded.*

Delivered October 25, 1893.