CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent, vs. J. I. CASE PLOW WORKS, Appellant.

*December 16, 1920—January 11, 1921.*

*Carriers: Action to recover freight charges: Negligence of company in declaring freight paid: Estoppel: Unlawful preferences.*

In an action against the consignee of an interstate lumber shipment to recover the freight charges thereon, the fact that the railway company's agent negligently delivered an expense bill showing all freight charges prepaid, whereupon the consignee paid the consignor the full contract price, though the lumber was to be delivered at destination f. o. b., is no defense, the interstate commerce act (U. S. Comp. Stat. 1918, § 8565) forbidding common carriers from giving any preference or advantage to any person or subjecting any person to any undue or unreasonable prejudice or disadvantage. To hold that the railway company, by reason of estoppel, might be prevented from collecting the freight due, would violate the rule of public policy thus prescribed.

238    SUPREME COURT OF WISCONSIN.    [Jan.

Chicago & N. W. R. Co. v. J. I. Case Plow Works, 173 Wis. 237.

APPEAL from an order of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

This is an action to recover freight charges on a carload of lumber consigned by the E. C. Bradley Company of Cincinnati, Ohio, to the appellant, *J. I. Case Plow Works,* of Racine, Wisconsin.

The plaintiff alleges that on November 4, 1914, there was delivered to the Alabama & Great Southern Railway Company at Toomsuba, Mississippi, a carload of lumber by the firm of Smith & Brewster as consignors, to be transferred over the lines of that company and its connecting carriers to the defendant at Racine, Wisconsin; that the lawful charge for such transportation was $206.01, no part of which has ever been paid.

The defendant, by way of separate defense, alleges a contract entered into between the defendant and the E. C. Bradley Lumber Company of Cincinnati, Ohio, by which the latter company sold to the defendant the lumber in question to be delivered to the defendant f. o. b. Racine, Wisconsin; that at the time of the delivery of the lumber to the defendant plaintiff's freight agent negligently delivered to the defendant an expense bill which stated that all freight charges on said car had been paid, and that in reliance upon such statement the defendant paid the full amount of the contract price of said lumber to the E. C. Bradley Lumber Company, making no deduction on account of freight charges.

To this separate defense the plaintiff demurred, which demurrer was sustained. This is an appeal from such demurrer.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Howard T. Foulkes,* of counsel, all of Milwaukee; and the cause was argued orally by *Mr. Foulkes.*

For the respondent the cause was submitted on the brief of *R. N. Van Doren* of Milwaukee.

SIEBECKER, C. J.   Do. the facts alleged in the separate defense constitute a defense by way of estoppel precluding the railroad company from collecting the freight charges fixed by law from defendant on this interstate shipment? The trial court held that the negligence of plaintiff's agent at Racine in presenting an expense bill to defendant which showed that the freight charges for this shipment had been paid does not constitute an estoppel precluding collection of its claim for freight charges from the defendant.   Such charges had not in fact been paid, but defendant in reliance on such incorrect bill paid the Bradley Company the price of the carload of lumber without deducting these freight charges which the Bradley Company had agreed to pay. The interstate commerce act (U. S. Comp. Stat. 1918, § 8565) forbids common carriers from giving any preference or advantage to any person or subjecting any person to any undue or unreasonable prejudice or disadvantage in any respect whatsoever in the conduct of its transportation business.

"The all-embracing prohibition against either directly or indirectly charging less than the published rates shows that the purpose of the statute was to make the prohibition applicable to every method of dealing by a carrier by which the forbidden result could be brought about."   *New York, N. H. & H. R. Co. v. Interstate Comm. Comm.* 200 U. S. 361, 26 Sup. Ct. 272.

In *Texas & P. R. Co. v. Leatherwood,* 250 U. S. 478, 39 Sup. Ct. 517, the court declared:

"That a carrier cannot be prevented by estoppel or otherwise from taking advantage of the lawful rate properly filed under the interstate commerce act is well settled.   A carrier has, for instance, been permitted to collect the legal rate, although it had quoted a lower rate and the shipper was ignorant of the fact that it was not the legal rate."

And in *A. J. Phillips Co. v. G. T. W. R. Co.* 236 U. S. 662, 35 Sup. Ct. 444, it is stated:

"The prohibitions of the statute against unjust discrimina-

tion relate not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments or the waiver of defenses open to the carrier."

It is manifest that the negligent presentation by plaintiff's agent of an erroneous expense bill to defendant for the shipment in question could be made the means of avoiding the legal tariffs for its service as carrier if it should be held to be estopped from collecting the freight charges when demanded of defendant as consignee of the lumber. The right to private contract between shipper and carrier is wholly abrogated by the interstate commerce act, and the rates fixed by law are enforceable by the carrier by force of law. Unlawful acts of a carrier's agents in connection with charging and collecting the legal rates for transportation cannot be made the foundation of an estoppel to prevent the carriers from enforcing the legal rate against those liable therefor. In *New York, N. H. & H. R. Co. v. York & W. Co.* 215 Mass. 36, 102 N. E. 366, the court says:

"The public policy thus declared supersedes the ordinary doctrine of estoppel, so far as that would interfere with the accomplishment of the dominant purpose of the act. It does not permit that inequality of rates to arise indirectly through the application of estoppel, which it was the aim of the act to suppress directly."

See, also, *Baltimore & O. S. W. R. Co. v. New Albany B. & B. Co.* 48 Ind. App. 647, 94 N. E. 906, and *Central of Georgia R. Co. v. Birmingham S. & B. Co.* 9 Ala. App. 419, 64 South. 202.

The trial court properly sustained the demurrer to the separately alleged defense.

*By the Court.*—The order appealed from is affirmed.