WATERS and another, Receivers, Respondents, vs. PFISTER & VOGEL LEATHER COMPANY, Appellant.

*December 14, 1921—January 10, 1922.*

*Carriers: Ocean and land carriers: Joint rates: Validity: Undercharges: Liability of consignee for lawful rate.*

1. Carriers subject to the Interstate Commerce Act cannot make a joint rate with an ocean carrier, and the transportation within the United States must be treated as a separate transportation, subject to the terms of that act, whether a separate bill of lading was issued or not.
2. Under the Interstate Commerce Act a consignee's acceptance of goods shipped in interstate commerce rendered it liable for the lawful freight charges of the railroad company where the charges prepaid by the ocean carrier were less than the lawful charges. It is the acceptance of the goods, and not the payment of part of the lawful charges, which makes the consignee a party to the contract. *Chicago & N. W. R. Co. v. J. I. Case Plow Works*, 173 Wis. 237, followed.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

The defendant accepted delivery of goods transported from New York to Milwaukee, after passage of the Interstate Commerce Act, without paying in full the published tariff for such transportation. It appears that a bill of lading was issued by the Russian East Asiatic Steamship Com-

pany, Limited, at Riga, and immediately indorsed to defendant, and provided that the goods are "Shipped . . . by Ed. R. Lange in and upon the steamship called the Estonia . . . to be delivered from the ship's deck, where the ship's responsibility shall cease, . . . at the port of New York . . . unto order or his or their assigns." "To be forwarded to Milwaukee by all rail at proprietor's risk but ship's expense. Custom-house entry in New York to be paid by consignees."

The bills of lading did not indicate the railroads over which the goods were to be forwarded from New York to Milwaukee and were marked "prepaid," although the freight charges and amount collected are not shown. The defendant made entry of the goods in the custom-house in New York on November 17, 1909, and on that day Benham & Boyeson, general agents of the steamship company, who on May 18, 1909, had obtained an erroneous quotation of the rate from New York to Milwaukee over the lines of the New York Central & Hudson River Railroad Company and connecting carriers, telephoned to the railroad company before forwarding the goods and were informed of the mistake and of the amount of the lawfully published rate for transportation of the goods. At the time the goods were received by the New York Central & Hudson River Railroad Company and later by the Pere Marquette Railroad, its connecting carrier, such roads were informed that the freight had been paid to the Russian East Asiatic Steamship Company, but were not informed as to the amount which had been prepaid and believed that the freight charges from New York to Milwaukee had been reckoned at the correct, published tariff rate, and the goods were delivered to the defendant without demand being made upon it for any freight charges. The amount paid by the steamship company was $1,191.01, computed in accordance with the erroneous quotation. The lawful charge, as provided by the published tariff, was $1,633.45. The steamship company paid to the car-

riers the sum of $1,191.01, and this action was begun to enforce collection of the sum of $442.44 with interest, representing the unpaid balance of the freight. There was judgment for the plaintiff, from which the defendant appeals.

For the appellant the cause was submitted on the brief of *Lines, Spooner & Quarles* of Milwaukee.

For the respondents there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *Douglass Van Dyke*.

ROSENBERRY, J. The case was tried upon an agreed statement of facts. There is some dispute as to whether or not the bills of lading issued were through bills. Ed. R. Lange was the agent of the shippers, and the stipulation recites:

"Said Russian East Asiatic Steamship Company, Limited, issued and delivered to said Edward R. Lange two bills of lading for such shipment from Riga, Russia, to Milwaukee, Wisconsin, which were then and there assigned to the defendant, *Pfister & Vogel Leather Company.*"

It does not appear definitely whether, upon the goods reaching New York and being delivered by the steamship company to the connecting carrier, a new bill of lading was issued. Whether a bill of lading was issued or not after delivery to the railroad company, the shipment was subject to the Interstate Commerce Act. Carriers subject to this act cannot make a joint rate with an ocean carrier, and the transportation within the United States must be treated as a separate transportation, subject to the terms of the act. *Pacific Mail S. Co. v. Western Pac. R. Co.* 251 Fed. 218; *J. H. Hamlen & Sons Co. v. Ill. Cent. R. Co.* 212 Fed. 324; *Armour P. Co. v. U. S.* 209 U. S. 56, 28 Sup. Ct. 428.

On behalf of the defendant it is urged here that the consignee can only become liable for the freight by reason of contract, express or implied.

On behalf of the plaintiff it is urged that the Interstate

Commerce Act, as construed by the supreme court of the United States, imposes on the person accepting delivery of interstate shipment the duty of paying the published transportation charges thereon, citing *Pittsburg, C., C. & St. L. R. Co. v. Fink,* 250 U. S. 577, 40 Sup. Ct. 27; *N. Y. Cent. & H. R. R. Co. v. York & Whitney Co.* 256 U. S. 406, 41 Sup. Ct. 509.   We are of opinion that upon this proposition the case is ruled by *N. Y. Cent. & H. R. R. Co. v. York & Whitney Co.*   In that case the railroad company sued the defendant company to recover the balance claimed for freight and refrigeration on nine carloads of melons, vegetables, and fruit consigned to the latter subject to lawful charges, and delivered at Boston during the years 1911 and 1912.   The goods were shipped in interstate commerce upon straight bills of lading approved as to form by the interstate commerce commission, but none of these bills of lading came into the consignee's possession and it had no knowledge of their issuance or terms.   The York & Whitney Company accepted the cars, paid the charges claimed, and settled with their customers.   Thereafter the railroad company discovered that they had collected a less amount than the lawful rate established and demanded the remainder due them by reason of the undercharges.   The demand was refused and the action was begun to enforce payment.   The lower court had held that whether or not there was a liability on the part of the York & Whitney Company to pay the rate imposed by law was a question of fact to be determined upon consideration of all the circumstances.   The supreme court of the United States said:

"We think the doctrine announced in *Pittsburg, C., C. & St. L. R. Co. v. Fink,* 250 U. S. 577, 40 Sup. Ct. 27, is controlling, and that the liability of York & Whitney Company was a question of law.   The transaction between the parties amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay or the carrier the right to charge.   The consignee could not escape the liability imposed by law through any contract with the carrier."

It is urged upon us here with great force that these cases

do not lay down the rule that a consignee is liable to pay the freight by reason of a statutory duty, but that the cases tend to establish the proposition that the consignee, having admitted himself to be partially liable, becomes liable for the full amount and not merely the amount of freight erroneously demanded or the amount paid where it was less than the lawful charge. It is not the payment of a part of the amount due that makes the consignee liable. It is the acceptance of the goods. Having made himself liable by the acceptance of the goods, he cannot discharge his liability by the payment of any amount less than the lawful charge. If he cannot relieve himself of liability by the contract with the railway company the converse would seem to be true, that his liability does not arise out of contract, for were the liability merely a contractual liability it might be limited or extinguished by the contract. This court is clearly committed to this theory of the law in *Chicago & N. W. R. Co. v. J. I. Case P. Works,* 173 Wis. 237, 180 N. W. 846. It is there said:

"The right to private contract between shipper and carrier is wholly abrogated by the Interstate Commerce Act, and the rates fixed by law are enforceable by the carrier by force of law."

It is the acceptance of the goods and not a payment of a part of the lawful charges that makes the consignee a party to the contract. Having accepted the goods, and it being undisputed that only a part of the lawful charge has been paid, the defendant thereby became liable for the remainder.

*By the Court.*—Judgment affirmed.