**PIERCE OIL CO. v. CARROLL.** (No. 1811.)

(Court of Civil Appeals of Texas. El Paso. Nov. 12, 1925.)

**1. Appeal and error ☞766—Court not obliged to deny consideration to briefs for noncompliance with rules.**

The Court of Civil Appeals is not required to deny consideration to briefs not in compliance with the rules.

**2. Sales ☞199—Intent of parties controls.**

In contracts of sale the intention of the parties, when clearly manifested, is of controlling importance, and will be given effect if possible.

**3. Sales ☞208—Ascertainment and identification of property indispensable to completed sale.**

It is indispensable to a completed sale that the chattel which is subject of sale shall be definitely ascertained and identified, until which time the contract can be no more than an agreement to supply goods of a certain kind or particular description.

**4. Sales ☞212—Sale of cotton not entirely picked not completed until delivery of storage receipt, and buyer took subject to execution levy prior thereto.**

Where bale of cotton sold by debtor to claimant had not been entirely picked and separated from ungathered mass in the field when agreement was made, the contract was purely executory, and did not become completed sale until delivery of storage receipt, and where, before such delivery, a creditor of seller levied on the cotton in possession of public weigher, the buyer's title was subordinate to execution lien.

Appeal from Martin County Court, John Atchison, Judge.

Proceeding under the statute between the Pierce Oil Company and M. J. Carroll to try the right of property in goods levied on under execution as the property of another. From an adverse judgment, the Oil Company appeals. Reversed and remanded.

W. E. Martin, of Abilene, and McGown, McGown & Anderson and J. H. Martin, all of Fort Worth, for appellant.

O. W. Fannin, of Fort Worth, for appellee.

HIGGINS, J. This is a proceeding under the statute for trial of the right of property to a bale of cotton claimed by Carroll, and which had been levied upon as the property of J. M. Blackerby under an execution against the latter in favor of the Pierce Oil Company. Upon trial without a jury judgment was rendered in favor of Carroll.

[1] Appellant's brief is not in compliance with the rules, and the appellee objects to its consideration on that account. We know of no reason why the rules of briefing should not be complied with, but their disregard is of the most common occurrence. If we should refuse to consider all briefs not in compliance with the rules a large proportion of the cases before this court would be disposed of upon that ground rather than upon their merits. For this reason this court has adopted the policy of never refusing to consider a question presented simply because of some noncompliance with the rules of briefing. In accordance with such policy this appeal will be considered upon its merits.

It was agreed upon the trial that at the time of the levy the cotton was not in the possession of Carroll, but in the possession of B. D. McCullough, public weigher of Martin county, who had the same in his cotton yard for storage. The officer executing the writ testified that he made the levy not later than 6 o'clock a. m. on the morning of October 15, 1924.

Carroll testified:

"I know J. M. Blackerby—have known him for about 15 years. On or about the 13th of October, 1924, I had a conversation with him about his account at the store. He owed me about $100. I told him that I would like for him to pay me some on his account, and he said that he had a bale of cotton nearly all picked out, and that he would finish picking it the next day and would bring it to town and have it ginned and apply it on his indebtedness at the store. I told him that I would take the bale of cotton and sell it when I sold my cotton, and would give him credit on his account for whatever it brought, but that I would guarantee him the market price that day, which as well as I remember was around 23½ cents middling basis, and that if the price went down I would stand the loss, but if it went up I would give him the benefit of the advance. Mr. Blackerby agreed to this. He said he would bring the cotton in next day, or in the next day or two, and have it ginned. This conversation, as well as I remember, was on the 13th of October, and on the 15th, as well as I remember, he brought me the public weigher's cotton ticket for the cotton. Yes; I considered I bought the cotton on the 13th. We agreed on the price, and Blackerby was to bring it in and have it ginned. The price agreed on was the market price of the 13th, which, as well as I remember, was around 23½ cents middling basis. * * * I claim that I bought that bale of cotton on the 13th, when it was in Blackerby's field. I claim that it was my cotton from that time on. I did not give Blackerby's account credit for the price the cotton brought until after I had sold it on the 20th or 21st."

Blackerby testified:

"I raised the bale of cotton in controversy in this suit. I brought it to town on the 14th of October, 1924, and had it ginned and baled and carried it to the public cotton yard, had it weighed by the public weigher and took his ticket for the same. I had it ginned in my name, and put it in the cotton yard in my name, and took the cotton ticket in my

name for it. It was in the evening of the 14th that I put it in the cotton yard and received the ticket for it. I took the ticket home with me that evening and next morning I brought my children to school and brought the ticket and gave it to Mr. Carroll about 9:00 o'clock in the morning of the 15th of October, 1924."

Cross-examination.

"I owed Mr. Carroll for provisions bought during the year, and a day or two before I brought that bale of cotton to town I agreed with him that I would let him have it, and that he would sell it and apply the proceeds on my account. I sold him that bale of cotton the 13th while it was on my farm. It was his cotton from that time on. I agreed to bring it in and have it ginned, and was to pay for the ginning. Yes; it was his cotton when he made the trade for it on the 13th. That was the way I understood it."

[2, 3] According to the testimony of Carroll and Blackerby, it was their intention to pass the title on the 13th when the sale of the cotton was agreed upon. In sales, as in other contracts, the intention of the parties, when clearly manifested, is of controlling importance, and will be given effect if possible. But—

"It is absolutely indispensable to a completed sale that the chattel which is the subject of the sale shall be ascertained and identified. The minds of the parties must meet in reference to some specific chattel, or otherwise there will remain but a mere agreement to sell, which has yet to be applied to some specific chattel in order to consummate the sale. As is said by Bigelow, C. J., 'Until the parties are agreed as to the specific, identical goods, the contract can be no more than an agreement to supply goods of a certain kind or answering a particular description.' The reason of this is obvious. There can be no transfer of property until the parties have ascertained and agreed upon the articles sold. Before they are designated and set apart in some form, there is nothing to which the contract of sale can attach or on which it can operate." 1 Mechem on Sales, § 695.

The same rule is thus stated in Woods v. Half, 44 Tex. 633:

"Property cannot pass, and therefore the thing is not sold unless, first, it is completed and wholly finished, so as to be in fact and in reality the thing purporting to be sold; and in the second place, it must be so distinguished and discriminated from all other things that it is certain, or can be made certain, what is the specific thing the property in which is changed by the sale. If the transaction be deficient in either of these points, it is not a sale, although it may be a valid contract for a future sale of certain articles when they shall be completed, or when separated from others."

The bale of cotton in controversy had not all been picked and separated from the ungathered mass in the field upon the 13th, and under the authorities cited this was an insuperable objection to the passing of title at that time. The facts show simply an executory contract of sale. Rea v. Schow & Bros., 42 Tex. Civ. App. 600, 93 S. W. 706. It did not become a completed sale until delivery, and there was no delivery until the seller surrendered to the buyer the storage receipt which was subsequent to the levy. The cases cited by appellee have no application. They were cases where all of the crop, gathered and ungathered, owned by the seller upon a certain place was sold. Brewer v. Blarton, 66 Tex. 532, 1 S. W. 572; Hopkins v. Partridge, 71 Tex. 606, 10 S. W. 214; Evans v. Groesbeck, 42 Tex. Civ. App. 43, 93 S. W. 1005; Baker v. Guinn, 4 Tex. Civ. App. 539, 23 S. W. 604; on second appeal (Tex. Civ. App.) 32 S. W. 370. In those cases the thing sold was clearly identified and definitely ascertained.

For the reason stated, the case must be reversed. We will not here render, because in the state of the record the value of the cotton is not certainly shown. The trial court made no findings, and we deem it best to remand so that such value may be definitely ascertained.

Reversed and remanded.