**HOUSTON & T. C. R. CO. v. JOHNSON. (No. 2067.)**

Court of Civil Appeals of Texas. El Paso. Dec. 8, 1927.

Rehearing Denied Jan. 12, 1928.

1. Appeal and error ⬅️766—Court will consider on their merits all questions presented in appellant's brief, unless precluded by imperative rule of practice or procedure.

Court of Civil Appeals will consider on their merits all questions presented in appellant's brief, unless precluded from so doing by some imperative rule of practice or procedure.

2. Carriers ⬅️198—Carrier, having represented to consignee that freight was prepaid to consignee's detriment, was estopped to recover freight charges on interstate shipment from consignee though discrimination prohibited (Interstate Commerce Act, §§ 2, 6 [49 USCA §§ 2, 6]).

Where carrier represented to consignee that freight charges on shipment from British Columbia to Texas had been prepaid and that total charges on shipment amounted to $185.40, consisting of demurrage and duty charge, and consignee paid such sum and carrier gave him receipt which showed freight charges had been prepaid, and thereafter, acting on this information and believing same to be true, consignee paid seller agreed price for goods less $185.40, but freight charges amounting to $532.60 had not been prepaid, carrier was estopped to recover freight charges from consignee, notwithstanding Interstate Commerce Act, § 2 (49 USCA § 2; U. S. Comp. St. § 8564), prohibiting discrimination between shippers, and section 6 (49 USCA § 6; U. S. Comp. St. § 8569), requiring charges specified in tariffs.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Dallas County Court, at Law; Paine L. Bush, Judge.

Action by the Houston & Texas Central Railway Company against Homer L. Johnson. From the judgment, plaintiff appeals. Affirmed.

Robt. G. Payne and Robertson, Robertson & Gannon, all of Dallas, for appellant.

C. A. Leddy, of Dallas, for appellee.

HIGGINS, J. Appellee objects to the consideration of appellant's brief for a number of reasons; one being that no assignments of error are copied therein. In its reply brief, appellant asks leave to amend its brief by adding thereto the fifth paragraph of its amended motion for new trial, which properly raises the question presented in its brief. The amendment is allowed, and the brief will be regarded as so amended.

[1] The other objections, to consideration of the appeal upon its merits, are overruled. It is the established practice of this court to consider upon their merits all questions presented in the appellant's brief (Pierce Oil Co. v. Carroll [Tex. Civ. App.] 277 S. W. 220; Crawford v. El Paso L. I. Co. [Tex. Civ. App.] 201 S. W. 233; Howley v. Sweeney [Tex. Civ. App.] 288 S. W. 602), unless precluded from so doing by some imperative rule of practice or procedure (Read v. Glidden Stores Co. [Tex. Civ. App.] 293 S. W. 243).

This appeal is presented upon unchallenged findings by the trial court, which may be summarized as follows:

On October 6, 1921, the Okanagan United Growers, Limited, of Vernon, British Columbia, as consignor, shipped from Kelowna, British Columbia, a car of apples consigned to Hughes Brokerage Company, at Oklahoma City, Okl. The shipment was diverted and reconsigned to Hughes Brokerage Company at Dallas, Tex., advise Finch Brokerage Company. Upon arrival at Dallas, and while the car was upon the tracks of the carrier, Homer L. Johnson, the appellee herein, purchased the car from the Finch Brokerage Company, agreeing to pay therefor $1,072.50, less all charges thereon. Johnson was upon the "credit list" of the carrier, and shipments were delivered to him with the understanding that he could pay the charges thereon in 48 hours after delivery. The car was delivered to Johnson under this understanding.

[2] The carrier represented to Johnson that the freight charges upon the car had been prepaid and the total charges thereon amounted to $185.40, consisting of $10.30 demurrage and $175.10 duty charge. Johnson paid said sum of $185.40 to the carrier, which gave him a receipt therefor, and which showed that the freight charges had been prepaid. Thereafter, and acting upon this information with respect to the freight charges being prepaid and believing the same to be true, Johnson paid to the Finch Brokerage Company the agreed price for the apples, less said sum of $185.40. In fact, the freight charges, which amounted to the sum of $532.60, had not been prepaid. Had Johnson been informed of this fact, he could and would have protected himself by deducting the amount thereof from the purchase price paid to the Finch Brokerage Company. The original order bills of lading properly indorsed were surrendered to the carrier when delivery was made to Johnson.

This suit was later brought by the delivering carrier against Johnson and David Finch, the latter trading under the name of David Finch Brokerage Company, to recover the freight charges. Finch was later dismissed from the suit because service upon him could not be obtained, he having moved out of the state. The Hughes Brokerage Company was not joined in the suit because appellant was unable to locate an agent of said company within this state upon whom service could be had.

The trial court held that the carrier was estopped to recover the freight charges from Johnson. The correctness of this ruling is the sole question presented by appellant.

Appellant asserts that, under sections 2 and 6 of the Interstate Commerce Act (sections 7885 and 7890, par. [7] Barnes' Federal Code [49 USCA §§ 2, 6; U. S. Comp. St. §§ 8564, 8569]), it is entitled and required to collect its legal freight charges as set out in the tariffs on file with, and approved by, the Interstate Commerce Commission and cannot estop itself from the collection thereof by the representation to the party to whom delivery was made that the freight charges had been prepaid.

There is conflict of authority as to the application of the doctrine of estoppel upon the present state of facts. There are some decisions by United States District Courts and state courts which sustain appellant. The weight of authority is to that effect. Western & A. Ry. Co. v. Underwood (D. C.) 281 F. 891; Great Northern Ry. Co. v. Hyder (D. C.) 279 F. 783; Central Warehouse Ry. Co. v. Central Warehouse Co. (D. C.) 14 F. (2d) 123; New York Cent. Ry. Co. v. Federal Sugar Refining Co., 235 N. Y. 182, 139 N. E. 234, 26 A. L. R. 1312; Chicago & N. W. Ry. Co. v. J. I. Case Plow Works, 173 Wis. 237, 180 N. W. 846; Waters v. Pfister, etc., 176 Wis. 16, 186 N. W. 173. But the highest federal authority upon the subject is the per curiam opinion of the Circuit Court of Appeals of the Sixth Circuit in Davis, Director General, v. Akron Feed & Fuel Co., 296 F. 675, where, upon a state of facts corresponding to the present case, such contention was rejected, the court saying:

"The law is well settled that representations or claims made by the carrier as to the correct amount of freight to be charged will not relieve

a consignee from the payment of the scheduled rate, for the reason that a shipper or consignee has equal opportunity with a carrier to know the published rate, and he is conclusively presumed to have such knowledge. Railway Co. v. York & Whitney, 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016. It is apparent that any other construction would defeat the purpose of the act, requiring full and exact payment of the published scheduled tariff upon every shipment of freight; and would afford opportunity for collusion and fraud between the carrier and favored shippers, to the injury and prejudice of the public.

"The question here presented, in the absence of any claim or proof of fraud and collusion, must be determined upon wholly different considerations. The consignee in this case had no knowledge, nor had it equal means with the railway company of acquiring knowledge, that the freight from Kansas City to Chicago had not been paid. No circumstance whatever is suggested in the agreed statement of facts that would put the consignee upon inquiry. The railway company knew, or ought to have known, that this freight was not paid, and, when it expressly stated that it had been paid, the consignee relied upon that representation, instead of refusing to accept the consignment until it had made full inquiry with reference to that fact, which inquiry would involve, not only delay, but expense, including demurrage. Nor had the consignee any more reliable source of information than the railway company itself.

"The consignee, at the time these representations were made to it, was in position to protect itself fully in the payment of all freight charges. It was wholly a matter of indifference to it whether these charges were $100 or $200. Whatever freight charges it was required to pay it could deduct from the purchase price of the merchandise. It is admitted that, if it is now compelled to pay this freight, it cannot recover the same from the consignor and must suffer the loss. If the matter were one wholly between the carrier and the consignee, there would be no question that the carrier's representation would estop it from demanding further payment of freight. While the statute requiring every shipper and consignee of freight to pay the full published scheduled rate is a salutary one for the protection of the public, nevertheless, in construing and enforcing this statute, courts should not wholly ignore private rights. It is equally important that the rights of private individuals should be protected.

"Counsel has not directed our attention to any case in which this exact question has been presented to the Supreme Court, nor does it appear from the investigation we have been able to make that the Supreme Court has held a shipper or consignee of freight liable for the payment of the full published scheduled rate, regardless of misrepresentations by the railway company, upon any theory other than that the shipper and consignee are conclusively presumed to know the published scheduled rate, and therefore may not rely upon the representations made by the carrier. In this case no presumption obtains that the consignee knew that the freight upon this consignment from Kansas City to Chicago had not been paid.

That was not a matter of public knowledge. While the question of legal liability is not free from doubt, the equities are clearly with the consignee, and we are not impressed that the public interest demands such construction of the law as would make the consignee suffer a loss due to the fault, negligence, and misrepresentations of the carrier."

This ruling was followed by the District Court for the Eastern District of Virginia in Cincinnati Ry. Co. v. Beveridge, 8 F. (2d) 372. See, also, Houston & T. C. Ry. Co. v. Lee Produce Co. (D. C.) 14 F. (2d) 145.

In the conflicting state of the authorities, and no ruling by the Supreme Court of the United States or the Supreme Court of this state applicable to the present facts, this court is at liberty to follow either line of the conflicting decisions. We believe the ruling in Davis, Director General, v. Akron Feed & Fuel Co., supra, is supported by sound and the better reason, and therefore follow same. The ruling of the trial court is sustained.

Affirmed.

### On Rehearing.

Upon rehearing, appellant calls to our attention the recent decision of the Eighth Circuit Court of Appeals in Central Warehouse Co. v. Railway Co., 20 F. (2d) 828, which supports appellant's contention in this case.

Notwithstanding this later decision, we adhere to the view that the ruling in Davis, Director General, v. Akron Feed & Fuel Co., is correct, and overrule the motion for rehearing.