MELLON, Director General of Railroads, Respondent, vs. JOHNSON COMPANY, Appellant.

*April 5—May 8, 1928.*

*Thomas H. Gill* of Milwaukee, for the appellant.

For the respondent there was a brief by *J. F. Baker* and *Llewellyn Cole,* both of Milwaukee, and oral argument by *Mr. Cole.*

OWEN, J. While the railroads were under federal control, defendant caused to be transported over certain railroad lines (to be hereinafter mentioned) logs from spur 373, also known as Cook's Mill, located on the Soo Line, in Michigan, to Escanaba, Michigan, upon which he paid the quoted freight rate. Plaintiff contends that the rate so quoted was erroneous and unlawful and brings this action to recover the balance.

It appears that there were two available routes over which the logs might be transported, namely: (a) From Cook's Mill, on the Soo Line, to Larch, and thence south on the C. & N. W. Line to Escanaba, a distance of 36.9 miles; and (b) from Cook's Mill, on the Soo Line, to North Escanaba, and thence south on the E. & L. S. Line to Escanaba, 39.1 miles. The shipments were moved via Larch and C. & N. W. route pursuant to routing instructions written into each bill of lading. The rates as specified in the published tariffs

then on file with the Interstate Commerce Commission were: (a) nine cents per hundredweight via Soo Line to Larch and C. & N. W. Line; and (b) three cents per hundredweight plus $5 per car via Soo Line to North Escanaba and E. & L. S. Line. Prior to making shipment, defendant had been informed by an agent of the Chicago & Northwestern Line that the rate for the route over which the logs were shipped was three and one half cents per hundredweight, while an agent of the Soo Line had quoted him a rate of three cents per hundredweight, plus $5 per car. Both rates were erroneous. At the time of the movement the carriers were operating under a unified and co-ordinated national control and not in competition. It is conceded that for the purposes of this case the railroads involved may be deemed the same as a single railroad and under one management, and that the situation is the same as if the lines from Cook's Mill to Escanaba were owned and operated by a single railroad corporation.

Appellant contends that there can be but one charge for the same service between two points on the same railroad, and that where there are two tariffs covering the same service between the same points, the shipper is entitled to have the lower rate applied, citing *U. S. v. Gulf Refining Co.* 268 U. S. 542, 45 Sup. Ct. 597. Respondent concedes this rule, but claims it has no application where the point of destination may be reached by different routes from the point of shipment, even though the routes be over the same railroad; that under such circumstances a lawful rate for the movement over the route designated by the shipper must be charged. We see no escape from this conclusion. The published tariffs on file with the Interstate Commerce Commission constitute the legal rates under federal control as well as before. According to those tariffs, the legal rate for the shipment in question, via Larch and the Chicago & Northwestern, was nine cents per hundredweight. They were the

sum of the two locals. No joint rate for the shipments had been established by the Chicago & Northwestern and the Soo Lines. While a joint rate of three and one half cents had been established by the Soo and the Escanaba Lines; that could not operate as a modification of the rates via Larch over the Chicago & Northwestern Lines. The legal rate for the shipment, therefore, over the route designated by the shipper was nine cents per hundredweight. This being the published rate on file with the Interstate Commerce Commission, it constituted the legal rate which the law required the shipper to pay and the railroads to collect. The fact that a lower rate obtained between these points over a different route did not invalidate the rate here sought to be collected. On the face of things the rate would seem to be unreasonable, but with that question courts have nothing to do. The inquiry here relates only to the legal rate. That is the rate the shipper must pay and the railroads must collect. It is indicated by the published tariff on file with the Interstate Commerce Commission for the route over which the logs were shipped.

Counsel for appellant refers to numerous cases to be found in · the Interstate Commerce Commission Reports where that commission declared rates under similar circumstances to be unreasonable, and ordered a reparation. To the Interstate Commerce Commission and not to the courts is confided the power to declare rates unreasonable and to authorize a reparation of charges paid. Courts possess no such power. *Waukesha Gas & Elec. Co. v. Waukesha Motor Co.* 175 Wis. 420, 184 N. W. 702. The following language used by the Interstate Commerce Commission in *A. J. Poor Grain Co. v. C., B. & Q. R. Co.* 12 Int. Comm. Comm. Rep. 469, at p. 470, contains much law applicable here:

"It is true that the complainant gave his routing instructions only after he had conferred with the agents of the principal defendant. But whether he was misinformed by them

either as to the rate or as to the route over which the rate erroneously quoted was applicable, he assumed to and did definitely control the routing. And this fact brings the case within the principles announced by us in our previous decision. A carrier is required by law to publish the rate and also clearly to indicate the route over which the published rate is applicable. When so published the rate named and the route designated stand as the law, binding as well upon the shipper as upon the carrier. A schedule of rates published in the manner provided by law speaks with equal authority to the shipper and to the carrier, and both are equally chargeable with notice of the rate and of the route over which the rate is made applicable. A mistake by a carrier in responding to an inquiry by a shipper, either as to the rate or as to the route, will relieve neither the one nor the other from the obligation of fulfilling the law's requirements; in either event the carrier must collect and the shipper must pay the rate as published for the route over which the shipments actually move. This general rule is founded not only on the strict language of the law but also upon a sound public policy. Where a shipper gives no routing directions and the carrier forwards the traffic over one route when another route carrying a lower rate is equally available, the commission holds it liable to the shipper for the difference between the higher rate and the rate applying over the less expensive route. This is a rule of obvious propriety. And the commission has issued a general permissive order under which carriers may adjust the differences in such cases without resorting to the commission for special authority. Rule 57, Tariff Circular No. 14-A. This, however, was not a case of misrouting by a carrier in the absence of directions by the shipper. The complainant, as heretofore indicated, definitely controlled the routing of his shipments, and this fact as definitely relieves the carrier of any liability to him."

That it was the duty of the plaintiff to collect the legal charges, and that the misquotation of rates by his agents did not constitute an estoppel, is clearly revealed by the following authorities: *Chicago & N. W. R. Co. v. J. I. Case Plow Works,* 173 Wis. 237, 180 N. W. 846; *Waters v. Pfister &*

*Vogel L. Co.* 176 Wis. 16, 186 N. W. 173; *Pittsburgh, C., C. & St. L. R. Co. v. Fink,* 250 U. S. 577, 40 Sup. Ct. 27. Our attention is called to the fact that by paragraph 4 of Director General Order No. 1 it was provided that "the designation of routes by shippers is to be disregarded when speed and efficiency of transportation service may thus be promoted," and that by circular No. 101 of the general director for the region including the movements here in question, it was further provided that "when traffic is forwarded by the railroads for efficiency reasons via a route to which a higher rate applies than over the route specified by shipper, the rate via the shipper's route must not be exceeded as a charge for the movement over the substituted route." Manifestly these provisions have no bearing upon the question. The route specified by the shipper was not disregarded, and, even though it were, the route so specified carried the higher rate. It seems plain that the legal rate for the shipments was nine cents per hundredweight.

The appellant further complains because the court allowed interest from June 1, 1919. It is his contention that the claim in the instant case grows out of a tort—the quoting of an unlawful rate or the misquoting or ignoring of a lawful rate. The action grows out of contract. The shipper is chargeable with knowledge of the legal rate. The filing of the rate with the Interstate Commerce Commission charges him with conclusive knowledge of what that rate was. The charge for transportation computed on that rate was due to the plaintiff upon the delivery of the logs. Interest on the amount remaining unpaid was properly allowed by the trial court.

*By the Court.*—Judgment affirmed.