## THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. J. B. KIRKHAM.

### No. 12,345.    (65 Pac. 261.)

#### SYLLABUS BY THE COURT.

RAILROAD—*Live-stock Contract—Provisions as to Notice of Injuries and Waiver of Notice Held Reasonable and Binding.* Where, in a special live-stock contract for the shipment of cattle, the shipper expressly agrees, as a condition precedent to his right of recovery for damages growing out of such shipment, that "he will give notice in writing to the conductor in charge of the train, or the nearest station- or freight-agent of the carrier on whose line the injuries occur, before said cars leave that carrier's line, or before the cattle are mingled with other cattle, or removed from pens at destination," such stipulation, fairly entered into by both parties, is reasonable and binding on the parties; and where it is further provided in such contract that "no agent of this company has any authority to waive, modify or amend any of the provisions of this contract," it is error to instruct the jury that notice different from that provided in the contract is sufficient, the instruction being based upon the waiver of such written notice by the acts or knowledge of the agent of the company.

Error from Coffey district court; W. A. RANDOLPH, judge.    Opinion filed June 8, 1901.    Division two. Reversed.

*T. N. Sedgwick, L. B. Kellogg,* and *James Redmond,* for plaintiff in error.

*Joe Rolston,* for defendant in error.

The opinion of the court was delivered by

POLLOCK, J.: This is an action brought to recover from a railway company damages for the killing of nine calves, alleged to have been caused by negligence of the company in making a shipment of a car-load of seventy-two calves from the city of Chanute to the city of Burlington. On the day of the shipment, the calves were driven a distance of eleven or twelve miles

over muddy roads, arriving in the city of Chanute
about four P. M., were loaded in a car which left the city
of Chanute on a special freight-train about five P. M.,
and arrived at the city of Burlington about 8 : 25 P. M.
The pens of the defendant company being muddy, the
calves were removed therefrom upon the evening of
arrival, and were driven some distance that night.
The shipment was made under a special live-stock
contract, a copy of which was attached to plaintiff's
bill of particulars in justice's court, where the action
was instituted.   This contract, among other things,
provided :

"The shipper further expressly agrees that, as a
condition precedent to his right to recover any dam-
ages for any loss or injury to said cattle resulting
from carrier's negligence as aforesaid, including de-
lays, he will give notice in writing to the conductor in
charge of the train, or the nearest station- or freight-
agent of the carrier on whose line the injuries occur,
before said cars leave that carrier's line, or before the
cattle are mingled with other cattle, or removed from
pens at destination.   In his notice he shall state place
and nature of the injuries complained of, to the end
that they may be fully and fairly investigated, and
said shipper shall, within thirty days after the hap-
pening of the injuries complained of, file with some
freight- or station-agent of the carrier on whose line
the injury occurred his claim therefor, giving the
amount.   Shipper's failure to comply with the re-
quirements of this section shall absolutely defeat and
bar any cause of action for any injuries resulting to
said cattle as aforesaid. . . .   No agent of this
company has any authority to waive, modify or amend
any of the provisions of this contract." . . .

No notice of damages was given, or claim made, to
the conductor in charge of the train at Burlington, or
to the station-agent at said place, until the following
day, and until the cattle had been removed from the

pens at point of destination.   Plaintiff had judgment
in justice's court and the railway company appealed.
Upon a trial in the district court plaintiff had judg-
ment, and the railway company prosecutes this pro-
ceeding in error.   It was found by the jury that
plaintiff overloaded the car ; that sixty-five of the
calves shipped were as many as could properly be
loaded into the car in which they were shipped.

. The principal ground of error claimed is in the fol-
lowing instructions of the court :

"3. The contract entered into between the plaintiff
and the defendant for the shipment of the calves is in
writing, and is attached to the plaintiff's bill of par-
ticulars in this case, and the conditions of such con-
tract are binding upon the parties, unless for some
reason the terms and conditions have been waived, or
the performance of the conditions rendered impossible
or unnecessary by the action of the parties or one of
them."

"5. If you find that the said calves in question
were killed by the carelessness and negligence of the
defendant railway company, and that the plaintiff
himself was not guilty of negligence in loading the
calves, and that due notice of the claim for damages
was given as required by the contract, or that the
necessity for giving such notice was waived, then you
will find for the plaintiff in the sum the evidence
shows he was damaged."

"9. If, when the car came into Burlington and the
plaintiff discovered that the calves were dead, or that
he wanted to claim damages for any reason, it was
his duty to make a claim in writing for such damages
of the conductor of the train or the station-agent.   If
the station-agent was not at the station when the
calves were unloaded, and he could not, for that
reason, give notice on that day and before mingling
the stock with other cattle, and if he gave such notice,
even though the cattle were removed from the yards
of the company a short distance at the time of such

notice, that would be sufficient. . . . If the sta-
tion-agent was at the station and saw the condition
of the stock, and plaintiff at once drove them away,
and then, on the next day, the plaintiff made the
demand in writing, that would be sufficient as to the
written notice, as required by the contract in this-
case.''

Live-stock contracts similar in their nature to the
one here involved have received the consideration of
this court, and, where fairly entered into by both
parties, in the absence of fraud, have been held con-
clusive and binding on the parties. (*Goggin v. K. P.
Rly. Co.*, 12 Kan. 416; *Sprague v. Mo. Pac. Rly. Co.*,
34 id. 347, 8 Pac. 465.) Hence, it must be held that
the terms and conditions of this special contract were
binding upon these parties and should have been so
declared by the court.

This contract also expressly provides that ''no
agent of this company has any authority to waive,
modify or amend the provisions of this contract.''
In the face of this express provision in the contract
which was binding upon the parties, neither the
station-agent in charge of the company's station at
the city of Burlington, nor the conductor in charge of
the train, had any authority to waive the notice in
writing stipulated in the contract; and the instruc-
tions of the court above quoted, based upon a waiver
of the conditions of the contract by the station-agent,
on account of his knowledge of the death of the calves
upon the arrival of the train, or upon any other
waiver of the terms and conditions of the contract
by the agent of the company, attempted to be shown
in this case, were erroneous, for which errors the
judgment is reversed.

DOSTER, C. J., SMITH, J., concurring.