Cohen, Respondent, vs. Minneapolis, St. `Paul & Sault Ste. Marie Railway Company, Appellant.

*December 7, 1915—January 11, 1916.*

*Carriers: Live stock killed in transit: Right to damages: Condition precedent: Notice: Contract: Validity: Duty to wait for car not ready when train arrives.*

1. A contract by which the shipper of live stock agrees that, as a condition precedent to his right to recover for loss of or injury to any of said stock, he will give notice of his claim before removal of the stock from place of destination or mingling with other stock, is valid.   It does not limit the carrier's commonlaw liability, but merely prescribes a condition precedent to the right to enforce it.

2. Unless restricted by the context, the word "injury" in such a contract includes injury resulting in death, and the provision for notice applies where stock is killed in transit.

3. Where a scheduled stock train running from Minneapolis to Chicago and obliged, in order to reach its destination in time for the early morning market, to run between thirty-five and forty miles per hour between stations, arrived five minutes late at a station, it was not the duty of the carrier to wait there for a car which, through no fault of the carrier, was not then ready for shipment.

4. Where in such case, at the shipper's request, the conductor wired to the train dispatcher for orders and was directed not to wait,

the fact that the car was ready before the train actually left does not show a breach of duty in proceeding without it, since to take it then would have involved additional delay.

[5. Whether, in such a case, waiting for the car would be the giving of a preference to the shipper in violation of the Interstate Commerce Act, is not decided.]

APPEAL from a judgment of the circuit court for Waupaca county: BYRON B. PARK, Circuit Judge. Reversed.

Action to recover damages to stock alleged to have been sustained in two interstate shipments from Weyauwega, Wisconsin, to Chicago, Illinois, one made July 1, 1913, resulting in the death of a hog of the stipulated value of $10 in the contract of shipment and upon which there was a salvage of $4.25, leaving a net loss of $5.75; the other made August 19, 1913, or one day later than plaintiff claims it should have been made, the delay causing him extra expense, shrinkage, etc., to the amount of $40 as found by the jury. Both shipments were made on a regularly scheduled fast freight train of the defendant. As to the shipment of August 19th the jury found (1) that on the 18th day of August, in addition to plaintiff not having signed the contract of shipment, his stock was not loaded and ready to be taken on the arrival of the train at Weyauwega; (2) that after the car was loaded it was the fault of defendant's employees that the car was not taken by the train on August 18th; and (3) damages in the sum of $40. The court entered a judgment in favor of plaintiff on both causes of action and the defendant appealed.

For the appellant there were briefs by *W. A. Hayes,* attorney, and *John L. Erdall,* of counsel, and oral argument by *Mr. Hayes.*

*C. F. Crane,* for the respondent.

VINJE, J. The shipping contract of July 1st contained the following provision:

"The said shipper further agrees that, as a condition precedent to his right to recover damages or loss of or injury to

any of said stock, he will give notice in writing of his claim therefor to some officer of said railroad company, or its nearest station agent, before said stock has been removed from said place of destination, and before such stock has been mingled with other stock."

In this case no such notice was given as to injury to shipment of July 1st. The notice was not given till July 7th, when presumably the dead hog, which was sold on the 2d, had been removed. The trial court held that this provision for notice did not apply to a case where injury to stock resulted in death before arriving at its final destination. The contract was evidently intended to read "damages for loss of or injury to" instead of "damages *or* loss of or injury to." But, be that as it may, it provides that notice of claim of loss or injury to stock shall be given before removal from place of destination or mingling with other stock. The word "injury" also, unless restricted by the context, includes injury resulting in death.

The validity of contracts limiting the shipper's right of recovery to cases where notice of loss or injury is given pursuant to reasonable terms of contract is sustained by the great weight of authority in this country. 1 Hutchinson, Carriers (3d ed.) sec. 442 *et seq.* See, also, 9 Am. & Eng. Ann. Cas. 20, note, and 14 Am. & Eng. Ann. Cas. 416, note. Such contract is held not to limit the carrier's common-law liability, but only to prescribe a reasonable condition precedent to the right to enforce it. The courts of Iowa, Kentucky, and Nebraska holding the contrary under their laws regard the stipulations as to notice to be a limitation upon the common-law liability of the carrier. 9 Am. & Eng. Ann. Cas. 24, note. The basis for the majority doctrine is thus summarized in 4 Ruling Case Law, p. 988:

"The theory of the courts on which such stipulations are sustained, as in the case of stipulations generally limiting the time within which shippers must present claims against a carrier, is that the requirement is a reasonable one, and that the object and purpose of the stipulation is to give the

railway company an opportunity to inquire into the alleged loss or damage, without expense and inconvenience, so that unjust claims may be thwarted and the company enabled to protect itself against fictitious and fraudulent claims."

While the reasons for giving notice in case of death of stock may not be as great as in the case of other injury, still there are good grounds for requiring it, especially in cases of shipments of carload lots to Chicago stockyards, where the cars are delivered to the consignees to be unloaded. The carrier is entitled to notice so that he can ascertain for himself that death has in fact occurred and can inspect the condition of the carcass both as bearing upon the cause of death and the question of salvage. There may be other reasons. Whatever they are it is proper and lawful to provide for notice of death as well as of lesser injuries.

Statements may be found in digests and headnotes to the effect that the obligation to give notice does not apply where stock is killed in transit. The cases of *Missouri, K. & T. R. Co. v. Frogley,* 75 Kan. 440, 89 Pac. 903; *Wichita & W. R. Co. v. Koch,* 8 Kan. App. 642, 56 Pac. 538; and *Kansas & A. V. R. Co. v. Ayers,* 63 Ark. 331, 38 S. W. 515, have been cited by annotators to sustain such a rule. In the first case the dead animal was removed by the carrier from the car. And the court said that since by such removal it had all the opportunity to ascertain the cause and extent of loss there was no need of any further notice. In the second case the dead animals were reloaded by the carrier during transit, and it was held that it had opportunity to ascertain both the fact of death and extent of loss. In the last case it appears that the agent of the railway company was present when the dead cattle were taken from the car by the owner, and the court said: "The company had all the opportunity it could have had to examine them." It will thus be seen that these cases were disposed of not on the ground that no notice of death was necessary, but because the carrier had

already received such notice either by its own removal or view of the dead animals.  In the case at bar the owner cared for the stock in transit, the consignee unloaded the car upon its destination at the Chicago stockyards, and there is nothing to show that the carrier ever knew the hog was dead till it received the notice on the 7th, five days after the hog was removed.

Where a reasonable notice is made a condition precedent to the right to recover there can be no recovery unless the required notice is given.  4 Ruling Case Law, 988 *et seq.; Clegg v. St. L. & S. F. R. Co.* 203 Fed. 971; *Hudson v. C., St. P., M. & O. R. Co.* 226 Fed. 38; *St. Louis & S. F. R. Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470; *Missouri, K. & T. R. Co. v. Kirkham,* 63 Kan. 255, 65 Pac. 261.  In the latter case the bill of lading provided that "the shipper further expressly agrees that, as a condition precedent to his right to recover any damages for any loss or injury to said cattle," etc., notice should be given, and it was held that the bill of lading required notice of the death of cattle which occurred during the shipment.  In *Hudson v. C., St. P., M. & O. R. Co., supra,* it was held that a sale of the stock within a day or two of its arrival constituted a removal of the same from the place of destination, since the court would take judicial notice of the way business is handled in the stockyards in Chicago.  Since plaintiff failed to give the required notice he cannot recover for the damages sustained to the shipment of July 1st.

As to the shipment of August 19th the jury found upon competent testimony that plaintiff's car was not ready when the train arrived at Weyauwega on the 18th.  It appears the train arrived there five minutes late.  The conductor, after a conversation with plaintiff in which the latter requested him to wait, wired the train dispatcher for orders and was directed not to wait.  The train was a scheduled stock train running from Minneapolis to Chicago, a distance

of 473 miles, and in order to make its schedule and arrive in time for the early morning market it had to make between thirty-five and forty miles per hour between stations.  Considerable testimony was received by the court over the objection of the defendant to the effect that trains often waited for cars when not ready upon the arrival of the train, and it was no doubt upon the strength of such testimony that the jury found in answer to the second question that after the car was loaded it was the fault of defendant's employees that it was not taken.  There is testimony to the effect that the car was loaded before the train left.  The findings of the jury raise the question, Is it the duty of a carrier of stock to wait for a car not ready for shipment when the train arrives? We think the question must be answered in the negative as applied to the facts in this case.  The evidence shows that between Minneapolis and Chicago there are between sixty and seventy stops, that usually the first stock is picked up at New Richmond, Wisconsin, forty-seven miles from the starting point, and that the bulk of the stock is picked up between Fond du Lac and Chicago in a distance of 159 miles.  It is quite obvious that a train usually composed of twenty-five to thirty-five cars upon its arrival at Chicago, if required to wait for cars not ready upon its arrival at stations, could not run on schedule time and could not arrive in Chicago in time for the early morning market.  The latter requirement is a very important one to shippers, both as to expense and the choice of an early market.  When a carrier publishes a schedule time of a train it is notice to shippers that if they wish to avail themselves of shipments on that train they must have their cars ready upon its arrival.  The fact that it may be ready before the train leaves does not answer if it would cause additional delay to take it then.  So here, the plaintiff cannot avail himself of the fact that he caused the train to wait for orders from the train dispatcher and then say the car should be taken because it was ready be-

fore the train left.　Carriers owe duties to all shippers and their business must be so conducted that it will best serve the general public.　No shipper has a right to insist that his shipment must be taken though it delay the train and so cause inconvenience if not loss to the carrier and to other shippers.　The operation of both freight and passenger trains on a long line of single track is attended with many difficulties; especially in the case of scheduled trains.　An unusual delay in one train may affect many other trains. Different passing points may have to be provided for or else other trains may have to wait an unreasonable time for the delayed one at the usual meeting point.　When the train dispatcher decided that this train, already five minutes late, should proceed without plaintiff's car, he must have determined that the interests of the carrier and other shippers required that there should be no further delay.　Such decision violated no duty which the carrier owed to the plaintiff. Under the law the carrier was required to exercise due diligence to run the train on schedule time.　Were it required to wait at the pleasure of individual shippers it could not perform its legal duty.　In order to predicate negligence upon the refusal to ship a car by a certain train it must appear that the car was ready for shipment when the train, on or after its schedule time, is ready to take it, or that the failure to have it ready was due to a fault of the carrier.

We have no such case here.　Considerable search for authorities upon this question has been made, but without success.　Whether the lack of a precedent is due to the obviousness of the fact that no duty devolves upon a carrier to hold its train beyond schedule time for passengers or goods or to the fact that no one has ever thought it worth while to raise the question we cannot say.　It must, however, be safe to assume that many cases of refusal to wait have arisen both as to passengers and goods.　Defendant also claims that if it had waited for plaintiff's car it would have violated the In-

terstate Commerce Act, which forbids the giving of prefer-
ences to any shipper.    Since we have arrived at the conclu-
sion that it was not defendant's duty to wait for the car, we
need not pass upon the question whether the federal act would
have been violated by waiting.

As to the shipment of August 19th the court should not
have submitted the second question because immaterial.
Judgment should have gone for defendant upon the answer
to the first question.

*By the Court.*—Judgment reversed, and cause remanded
with directions to enter judgment dismissing the action.