## SCHAFF v. IKE EXSTEIN & BRO.
(No. 3029.)

(Court of Civil Appeals of Texas. Texarkana. March 5, 1925.)

1. **Carriers** ⬤⟾159(2)—**Stipulation in bill of lading for making claim within certain time became binding on carrier, consignees, or shipper.**

Stipulation in bill of lading, issued in compliance with uniform Bill of Lading Act and federal statutes, and providing for making of claim for loss or damage within certain time, became lawful condition on which merchandise was received and forwarded by carriers, and was binding alike on carrier and consignees or shipper.

2. **Carriers** ⬤⟾180(1)—**Failure of consignees to present written claim for shortage within stipulated time held to deprive them of right of recovery.**

Where bill of lading provided for making of claim for loss or damage within certain time, it devolved on consignees to make and present written claim for shortage of goods in shipment, either to initial or to delivering carrier within time stipulated, and failure to do so deprived them of right to recover.

3. **Carriers** ⬤⟾180(1)—**Written notation, by agent of delivering carrier, of shortage, in connection with verbal notice, held not to constitute claim for loss.**

Where consignees claimed shortage of three boxes of shoes, written notation, by delivering carrier's agent, on freight and expense bills, that shipment checked three cases short, in connection with verbal notice by consignee, did not constitute claim for loss made to delivering carrier.

4. **Carriers** ⬤⟾180(1)—**That agent of delivering carrier had knowledge of loss did not make verbal notice sufficient claim for loss.**

Verbal notice of loss given by consignees, in connection with agent's knowledge of loss, held not to constitute claim for loss against delivering carrier.

5. **Carriers** ⬤⟾159(3)—**Estoppel by waiver of notice of loss unavailing.**

Under interstate bill of lading requiring claim for loss, estoppel by waiver of notice on carrier's part is unavailing.

**6. Carriers ⬡180(1)—Letter written by local agent of railway with which claim was first filed to originating carrier held not substantial compliance with requirement as to claim for loss.**

Where bill of lading required claim for loss or damage, it was required to emanate from claimant or his authorized agent, and to be made directly, either to originating or delivering carrier, and, where consignees made claim to wrong carrier, letter written by such carrier's local agent to originating carrier, in connection with claim, *held* not equivalent to substantial compliance with stipulation.

**7. Contracts ⬡280(1)—Particular mode of doing thing agreed on must be pursued.**

Where parties have agreed on particular method of doing a thing, that particular mode must be pursued.

**8. Carriers ⬡180(1)—Agent of railway with which consignees erroneously filed claim for damage held not agent of initial carrier or consignees.**

Where consignees claiming shortage of goods shipped, erroneously filed claim with wrong railway, its agent could not be considered either as agent of initial carrier or consignees in presentation of claim.

Appeal from Grayson County Court; R. M. Carter, Judge.

Action by Ike Exstein & Bro. against C. E. Schaff, receiver of the Missouri, Kansas & Texas Railway of Texas. Judgment for plaintiff, and defendant appeals. Reversed, and judgment entered.

The suit is by appellees, a partnership, against the receiver of the Missouri, Kansas & Texas Railway of Texas, to recover damages for the alleged loss in transit of three cases of shoes, and the receiver has appealed from a judgment against him. The suit originated in the justice court and, was carried to the county court on appeal.

On July 7, 1920, the firm of McElwain-Hutchinson & Winch delivered to the Mallory Steamship Company at Boston, Mass., five cases of shoes consigned to appellees at Sherman, Tex. The through bill of lading issued by the steamship company has the following stipulation:

"Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded, or damaged by transit, by carelessness or negligence, as conditions precedent to recovery claims must be made in writing to the originating or delivering carrier within six months after delivery of the property, or in case of failure to make delivery of the property, then within six months after a reasonable time for delivery has elapsed."

The bill of lading issued was, as agreed, "in compliance with the uniform Bill of Lading Act and the federal statutes governing bills of lading." The shipment moved over

the line of the steamship company to Galveston; thence over the line of the Missouri, Kansas & Texas Railway Company of Texas to Sherman, Tex., the destination, arriving there on August 11, 1920. At the time the shipment arrived at Sherman the waybill accompanying the shipment had the notation thereon, "Checks three cases short at Ray." At Sherman, on arrival there, the three cases were missing. The railway agent at Sherman noted on the waybill, "Checks three cases short at Sherman," and he also marked on the expense bill the same notation. The two cases were delivered to the consignees, and the expense bill furnished the consignees contained the notations. The appellees received the shipment, except the three missing cases, and at the same time verbally notified the agent of the railway company that they would make claim against the railway company for the three cases. The consignees never received the missing shoes, and they did not file a claim in writing for the loss with the Missouri, Kansas & Texas Railway Company of Texas, nor directly or actually with the steamship company, within six months from August 11, 1920. They did file a claim for the loss after more than six months had elapsed with the Missouri, Kansas & Texas Railway Company, the delivering carrier, which was refused upon the ground that it was "not filed within six months from the date of delivery of the shipment as required by the bill of lading." In explanation of the delay in filing the claim with the Missouri, Kansas & Texas Railway Company of Texas, the defendant in this suit offers the following agreed facts:

"That, about the same time of the shipment of the five cases of shoes, the plaintiffs had another shipment of two cases from the same firm, consignors, at Boston, Mass., which moved over the lines of the Mallory Steamship Company and the St. Louis, San Francisco Railway Company to Sherman, and in which shipment at the time of its arrival at destination there was also a shortage. This second shortage was subsequently found and the shoes finally delivered to the plaintiffs. That subsequently, and within six months from August 11, 1920 (the date of the delivery of first mentioned shipment), the plaintiffs filed a claim for the three cases of shoes lost out of the shipment moving over the line of the Missouri, Kansas & Texas Railway Company of Texas, with the St. Louis, San Francisco & Texas Railway Company, but erroneously so, and attached in support of the claim the freight bill covering the shipment of shoes over the St. Louis, San Francisco & Texas Railway Company, and also the bill of lading covering the shipment moving over the line of the Missouri, Kansas & Texas Railway Company of Texas. That within six months of August 11, 1920, the agent of the St. Louis, San Francisco & Texas Railway Company at Sherman wrote to the general agent of the Mallory Steamship

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Company at Boston the following letter, dated Sherman, Tex., January 24, 1921:

"'Dear Sir: Referring to your letter of 18 inst., matter has not yet been straightened out. For your information will explain further: Ike Exstein & Bro. have filed claim with this company for $183.45, alleging shortage three cases of shoes, attaching bill of lading signed by you July 8 calling for five cases shoes from Mc-Elwain-Hutchinson & Winch. To this claim is attached our freight bill covered by your waybill to me 958 August 3 bill as two cases. Exstein claims that the two cases on your waybill 958 is part of the five cases covered by your waybill above referred to, which according to the copy furnished us is covered by your waybill Pro 338 JAC via Sherman, San Marcos, sailing July 9.

"'Advise further with reference to both shipments. Holding claim awaiting this information.'

"That said letter was written by the agent of the St. Louis, San Francisco & Texas Railway Company in the course of investigation of said claim filed with the said company by the plaintiffs. The letter was promptly received by the addressee, and within the six months of arrival of the shipment at Sherman. That subsequently, after six months had elapsed, plaintiffs learned from the St. Louis, San Francisco & Texas Railway Company that this claim had been filed with the wrong railway company, and they then promptly filed the claim with the Missouri, Kansas & Texas Railway Company of Texas."

It is further agreed:

"That the three cases of shoes in controversy were lost by defendant, and that the said shipment was an interstate one. That the only written notice that the originating carrier had of the claim for the shipment was the letter above quoted and the notation on the waybills quoted."

Head, Dillard, Smith, Maxey & Head, of Sherman, for appellant.

J. K. Jamison, of Sherman, for appellee.

LEVY, J. (after stating the facts as above). The appellant pleaded, in bar of the suit, that the appellees had not made a timely claim in writing for failure to make delivery of the three cases of shoes, in accordance with the stipulation of the bill of lading.

[1] The stipulation in the bill of lading, providing for the making of claim for loss or damage within a certain time, pursuant to federal act, became the lawful condition upon which the shoes were received and forwarded by the carriers, and was binding alike upon the carrier and the consignee or shipper. Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; Ry. Co. v. McLaughlin, 242 U. S. 142, 37 S. Ct. 40, 61 L. Ed. 207, and other cases. As stated in the Case of Tel. Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094:

"The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the amount charged for the service rendered."

Further, as stated in the case of Blish Milling Co., supra:

"It is urged, however, that the carrier in making misdelivery converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed."

And, as the stipulation as to notice "is not," quoting from Tel. Co. v. Woods (Tex. Civ. App.) 266 S. W. 179:

"In the nature or legal status of a simple contract of the parties, subject to their will and abrogation, unaffected by public concern or law, consequently the company could not waive the condition, and estoppel would be unavailing."

[2] Accordingly, it appears clear that it devolved upon appellees to actually make and present a written claim, either to the initial or to the delivering carrier within the stipulated time, and their failure to do so would deprive them of any right to recover in this case.

It appears appellees knew at once of the loss, and the exact amount of it, and had abundant opportunity to make a timely written claim therefor, either to the Mallory Steamship Company or to the Missouri, Kansas & Texas Railway Company of Texas, the delivering carrier. and instead erroneously made their claim, in the first instance, against the St. Louis, San Francisco & Texas Railway Company, a carrier having no connection with or relation to the shipment or transportation. After the claim so made to the St. Louis, San Francisco & Texas Railway Company had been investigated by that company, and it had notified the appellees of the refusal of same because the "claim had been filed with the wrong railway company," then the appellees made claim against the appellant company, but such claim was made at a date too late to be in compliance with the terms of the stipulation. Therefore it is evident that the appellees are barred of the right to sue for the loss, unless the special facts became a claim in writing in substantial compliance with the stipulation.

[3-6] The written notation by the railway agent upon the freight bill and. expense bill that the shipment checked three cases short, in connection with the verbal notice given by the appellees, did not constitute in effect a claim for loss, made to the appellant, the de-

livering carrier, as has been decided. Ry. Co. v. Overton (Tex. Civ. App.) 178 S. W. 814; Taft & Van Dyke v. Atlantic Coast Line R. Co., 93 S. E. 752; Johnson v. Ry. Co. (Mo. App.) 187 S. W. 282, and other cases. Nor was it sufficient that, in connection with the verbal notice given by the appellees, the railway agent himself had knowledge of the loss. Ry. Co. v. Starbird, 243 U. S. 592, 37 S. Ct. 462, 61 L. Ed. 917. For, as announced in the cases, proof of the bare fact of actual knowledge by the carrier of the loss, or even conversion of the goods, is insufficient, and estoppel by waiver of notice on the carrier's part is unavailing. Likewise, the letter written by the local agent of the St. Louis, San Francisco & Texas Railway Company to the Mallory Steamship Company, in connection with the filing of the claim in the first instance with the agent of this railway company, could not be regarded as equivalent in its legal effect to a substantial compliance with the stipulation or the law authorizing the stipulation. For, according to the intention of the stipulation, the claim is required to emanate from a given person, the claimant himself, or his authorized agent, and to be made directly to either the "originating or delivering carrier," through its authorized agent; and it was not within the authority of the parties to modify the terms of the bill of lading.

[7] It is the general rule that, where the parties have agreed upon a particular method of doing a thing, as that the claim "in writing" shall be timely made by a claimant himself or his authorized agent "to the originating or delivering carrier" through its authorized agent, the particular mode must be pursued. As a legal consequence anything less than that is not a compliance. As appears the claim was made by the appellees direct to the St. Louis, San Francisco & Texas Railway Company, which was not a carrier having any relation to the particular shipment or loss. And the letter in evidence, as agreed, "was written by the agent of the St. Louis, San Francisco & Texas Railway Company in the course of investigation of said claim filed with the said company by the plaintiffs." It may be true, as determined by the court, that the steamship company "had notice of the claim by the letter of the railway company," in the meaning that the letter informed the steamship company that appellees had filed a claim against the St. Louis, San Francisco & Texas Railway Company for the loss of the three cases of shoes, stating the value of the same and that they were demanding payment for the loss. But it is clear that it was not the intention and purpose of the parties to make that claim so filed a claim against the steamship company and to accomplish the purpose of compliance with the bill of lading, and that the letter did not purport or intend to forward and lodge the claim made with the originating carrier, the steamship company.

[8] And in no wise was the agent of this railway company the agent of the steamship company in respect to the shipment or the loss or the adjustment of the claim. The railway agent was acting solely as the agent of this railway company, both in receiving the claim, and in pursuing the investigation of the same. His mere possession of the claim in the course of investigation did not confer authority upon him to act for the steamship company, another distinct principal. It is clear, too, that the railway agent was not by purpose and intention undertaking to act as the agent of the appellees and for their benefit in receiving the claim in the first instance and corresponding concerning it. The railway agent, in such circumstances, was in a position of and was actually representing interests adverse to appellees. He was acting solely as agent of the railway company, and did not pretend or assume to be acting for appellees. Upon no other legal ground than agency could the point rest; and, that not existing, there results a failure on appellees' part to make claim in writing within the time stipulated "to the originating carrier."

The judgment is reversed, and judgment is here entered in favor of the appellant, with costs of both trial courts and of this appeal.