NORTHERN WISCONSIN PRODUCE COMPANY, Appellant, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*January 13—February 10, 1931.*

For the appellant there was a brief by *Hougen & Brady* of Manitowoc, and oral argument by *Charles E. Brady.*

For the respondent there was a brief by *J. F. Baker* and *Llewellyn Cole,* both of Milwaukee, and oral argument by *Mr. Cole.*

WICKHEM, J. Since this was an interstate shipment, it is subject to the provisions of the Interstate Commerce Act. According to the provisions of this act, it is unlawful for a common carrier to give any undue or unreasonable preference or advantage to a shipper. Every common carrier is required by the act to file with the Interstate Commerce Commission a complete schedule of rates, terminal charges, storage charges, icing charges, and all other charges, and all privileges or facilities granted or allowed to shippers. It is further provided that no carrier shall extend to any shipper any privileges or facilities in the transportation of property except such as are specified in the tariffs. As a result of the provisions of this act, "the relations between common carriers and shippers are no longer mere matters of contract, but are fixed by the laws and rules regulating such interstate commerce and partake of the nature of statutory obligations." *Chicago, I. & L. R. Co. v. Peterson,* 168 Wis. 193, 195, 169 N. W. 558. To the same effect see *Chicago & N. W. R. Co. v. J. I. Case Plow Works,* 173 Wis. 237, 240, 180 N. W. 846.

It seems clear that under the Interstate Commerce Act the respondent not only was not obligated to furnish heat for this shipment further than Milwaukee, but that it was under an obligation not to do so because the tariffs filed did not call for such service, and the act forbids as discriminatory any service not included in the published tariffs. *McGovern v. Ann Arbor R. Co.* 165 Wis. 525, 162 N. W.

668. The connecting carriers, the Grand Trunk and Canadian National Railways, had no scheduled tariffs calling for protection of less than carload shipments, and are in the same situation.

It is clear, in view of the foregoing, that the agreement in the bill of lading, even though it may be construed to evidence the parties' intention that the shipment be protected, is void and of no effect. It follows, if this be true, that a finding of negligence cannot be predicated upon a failure to furnish a service which it would be illegal to furnish. Any negligence that may be supposed to be present here must arise out of the failure to notify the shipper that the shipment would not be protected beyond the city of Milwaukee. The shipper, however, is bound by the terms of the tariffs referred to in the bill of lading, as fully as if they were set forth in the bill of lading, and is charged with knowledge of their provisions. These tariffs provide that where there is scheduled refrigerator-car service over a portion of the road, perishable freight may be given the benefit of it, but will be subject to ordinary box-car service or its equivalent for that portion of the road over which such protective service is not furnished. In *Chicago & A. R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. 648, it is said:

"An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract relief will be denied, because its allowance without such publication is a violation of the act. . . . The broad purpose of the Commerce Act was to compel the establishment of reasonable rates and their uniform application. That purpose would be defeated if sanction be given to a special contract by which any such advantage is given to a particular shipper as that contracted for by the defendant in error. . . . That the defendant in error did not see and did not know that the published rates and schedules made no provision for the service he contracted for, is no defense. For the purposes of the present question he is presumed to

have known. The rates were published and accessible, and, however difficult to understand, he must be taken to have contracted for an advantage not open to others."

To create a liability for negligence in such a situation, it seems to us, would tend to defeat the purposes of the very carefully drafted provisions of the law directed against discrimination.

*By the Court.*—Judgment affirmed.