HANAMAN, Respondent, vs. LIBERTY TRUCKING COM-
PANY, Appellant.

*December 8, 1942—January 12, 1943.*

For the appellant there was a brief by *Adams & Adams* of Beloit, and oral argument by *Allan W. Adams.*

For the respondent the cause was submitted on the brief of *Arnold, Caskey & Robson* of Beloit.

FRITZ, J. The defendant Liberty Trucking Company, a common carrier by motor truck, operating under the United States Motor Carrier Act of 1935, transported for the plaintiff, Harley D. Hanaman, an eighteen-hundred-pound printing press from Chicago to defendant's terminal building in Beloit, Wisconsin, where plaintiff had his place of business. Upon defendant notifying plaintiff of the arrival of the press, he informed defendant that he did not then have room for it and asked if he could leave it with defendant until he arranged to pick it up. He contends that defendant's agent promised there would be no storage charge. The trial court so found, although defendant contends that its agent agreed to leave the press on its dock free of charge only for such time as its tariff schedule permitted free storage; and that a contract for further free storage would have been void and unenforceable. Although defendant demanded that plaintiff remove the press, it stayed on defendant's covered dock at its terminal from February 25, 1941, until May 29, 1941, before plaintiff sent for it; and then, upon defendant refusing to allow plaintiff to take the press without first paying the freight and storage charges due, plaintiff commenced this action of replevin. It is undisputed that at that time plaintiff had not tendered or paid the transportation or storage charges; that after he had rested his case and defendant had commenced its defense on the original trial, plaintiff in open court tendered defendant $10 for the transportation charge; but that he has never tendered the storage charge. Likewise it is undisputed that defendant transported the press as an inter-

state shipment to plaintiff, as the consignee designated in the bill of lading issued in relation thereto; that the defendant, operating as a common carrier by motor truck under the United States Motor Carrier Act of 1935, had duly filed and published tariff schedules, which were approved by the interstate commerce commission; and that under these schedules and the bill of lading it was not required to deliver the press to plaintiff's place of business. Consequently, there were applicable to the transportation and storage of the press, to the charges to be made therefor until plaintiff removed it from defendant's terminal premises, and to its carrier's lien thereon to secure payment of those charges, the following provisions in the United States Motor Carrier Act of 1935, in the defendant's tariff schedules, and in its bill of lading, to wit:

(Motor Carrier Act) "Sec. 303. . . . (a) *Definitions.* As used in this chapter— . . . (19) The 'services' and 'transportation' to which this chapter applies include all vehicles operated by, for, or in the interest of any motor carrier irrespective of ownership or of contract, express or implied, together with all facilities and property operated or controlled by any such carrier or carriers and used in the transportation of passengers or property in interstate or foreign commerce or in the performance of any service in connection therewith." (p. 281, Supp. I, U. S. Code.)

(Tariff Schedule) "Sec. No. 10. . . . *Storage Rules, Regulations and Charges.* . . . (d) Forty-eight (48) hours, (2 days) free time will be allowed for the removal of freight from the carrier's premises, which time will be computed from the first 7 a. m. after notice of arrival of shipment has been sent to the consignee at destination, Sundays and legal holidays excepted.

"(e) Shipments held in or on carrier's premises in excess of the free time allotted will be subject to storage charges shown in paragraphs (f) and (g) of this item, or at option of carrier, may be sent to public warehouse at owner's expense."

(Bill of Lading) *"Contract Terms and Conditions* . . . Sec. 4. (a) Property not received by the party entitled to receive it, within the free time (if any) allowed by tariffs

lawfully on file (such free time to be computed as therein provided) after notice of arrival of the property at destination . . . has been duly sent or given, and after placement of the property for delivery at destination or at the time tender of delivery of the property to the party entitled to receive it has been made, may be kept in vehicle, warehouse, or place of business of the carrier, subject to the tariff charge for storage and to carrier's responsibility as warehouseman, only, or at the option of the carrier may be removed to and stored in a warehouse at the point of delivery or at other available point at the cost of the owner, and there held without liability on the part of the carrier, and subject to a lien for all transportation and other lawful charges, including a reasonable charge for storage."

"Sec. 7. The owner or consignee shall pay the transportation and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier shall deliver or relinquish possession at destination of the property covered by this bill of lading, until all tariff rates and charges thereon have been paid."

Under the above-quoted provisions in sec. 10 (d) and (e) of the tariff schedule, plaintiff, upon being notified on February 25, 1941, of the arrival of the press, was entitled to the allowed forty-eight hours of "free time" for his removal of the press from defendant's premises, but upon the expiration of that period the shipment became subject to the storage charges shown in paragraphs (f) and (g), unless the carrier at its option had sent the press to a public warehouse at the owner's expense. Likewise, under the above-quoted provisions in sec. 4 (a) of the bill of lading, upon plaintiff's failure to remove the press within the allowed free time of forty-eight hours after he was notified of the arrival and placement thereof at defendant's terminal for delivery to him, it could be kept by defendant in its place of business "subject to the tariff charge for storage . . . and subject to a *lien* for all transportation and other lawful charges, including a reasonable charge for storage;" and under sec. 7 of the bill of lading

plaintiff, as owner and consignee, was required to pay those charges; and to plaintiff's obligations in those respects there was applicable the provision that "except in those instances where it may lawfully be authorized to do so, no carrier shall deliver or relinquish possession at destination of the property covered by this bill of lading *until* all tariff rates and charges thereon have been paid." Consequently defendant was not only authorized, but was positively required to make the scheduled charges for storage, as well as transportation, and the lien therefor on the press could not lawfully be waived or the press relinquished by the carrier until all charges were paid. Under the circumstances, any promise or understanding to make no charge for storage, or an omission to charge therefor, would be in violation of defendant's bill of lading and tariff schedule; and constitute a preference to plaintiff and unlawful discrimination against other consignees, in violation of the following provisions in secs. 317 (b) and 316 (d) of the Motor Carrier Act of 1935, to wit:

Sec. 317 (b)—"No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; and no such carrier shall . . . extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs." (p. 288, Supp. I, U. S. Code.)

Sec. 316 (d)—". . . It shall be unlawful for any common carrier by motor vehicle engaged in interstate or foreign commerce to make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, gateway, locality, . . . or description of traffic in any respect whatsoever; or to subject any particular person, port, gateway, locality, . . . or description of traffic to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." (p. 287, Supp. I, U. S. Code.)

In view of those provisions any promise or understanding that there was to be no charge for storage, or no lien therefor or for the freight charge, would clearly be unlawful and void. Neither any such promise or understanding, nor the doctrine of waiver or estoppel can be invoked when the application thereof would result in such violation. *Chicago & N. W. R. Co. v. J. I. Case Plow Works,* 173 Wis. 237, 240, 180 N. W. 846; *Waters v. Pfister & Vogel L. Co.* 176 Wis. 16, 18, 19, 186 N. W. 173; *Northern Wis. P. Co. v. Chicago & N. W. R. Co.* 203 Wis. 549, 553, 234 N. W. 726; *Chicago & Alton R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033; *Southern R. Co. v. Prescott,* 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836, 839.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with the prayer in defendant's answer.

BARLOW, J., took no part.