CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent, vs. KILEEN and another, Appellants.*

*April 15—May 18, 1943.*

\* Motion for rehearing denied, with $25 costs, on July 27, 1943.

162

For the appellants there was a brief by *Crawford & Crawford* of Superior, and oral argument by *Raymond A. Crawford*.

For the respondent there was a brief by *John F. Baker* and *John E. Krueger*, both of Milwaukee, and oral argument by *Mr. Krueger*.

MARTIN, J.  Plaintiff carrier brings this action to recover freight charges for the transportation of sand and gravel shipped by Wissota Sand & Gravel Company from its pit at Haugen, Wisconsin, to the defendant Construction Company at Ashland Junction and Dauby, Wisconsin.  There were in all eighty-eight separate shipments.  The carrier furnished its cars at the Wissota Sand & Gravel Company's pit when and as ordered by defendant Construction Company.  Each shipment moved under a separate bill of lading.  The bills of lading were made out at the Wissota Sand & Gravel Company's pit by its employees.  The cars were receipted for by the carrier's agent at Haugen.  There being no scale, either at the pit or at the railroad station at Haugen, the cars were weighed at Spooner, Wisconsin, seventeen miles north of Haugen.  On each bill of lading was printed, "received, subject to the classifications and tariffs in effect on the date of the issue of bill of lading."  Sec. 2 (b) of the Uniform Bill of Lading, under which each shipment moved, provides as follows:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be

instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

Sec. 7 provides in part as follows:

"The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property."

In their counterclaim defendants alleged that respondent, in the delivery of sand and gravel, was negligent and careless in the operation of its railroad and in the maintenance of its cars; that there was actually delivered to the carrier by the Wissota Sand & Gravel Company the quantities which plaintiff alleged it received and for which defendants were billed for freight charges; that the difference between the amount received and the amount for which defendants were billed was lost by the carrier as the result of failure to exercise ordinary care; that there were lost 1,859.25 tons of sand, and 2,039.68 tons of gravel, for which defendants paid Wissota Sand & Gravel Company twenty-five cents per ton for sand and sixty-one cents per ton for gravel; that by reason of the failure of plaintiff carrier to exercise ordinary care in the transportation of said sand and gravel, defendants sustained damage in the sum of $1,688.81.

Defendants further allege that they were charged $2,378.35 for freight on shipments of sand and gravel which they never received. The counterclaim contains a further item of $379.93, which defendants claim is due them pursuant to an agreement made with the plaintiff on July 20, 1939, under which defendants paid plaintiff the sum of $900 for construction, removal, and rental of a temporary spur track at Dauby, Wisconsin; that said agreement provided that plaintiff would

return to defendants the portion of the $900 not actually used for said purpose; that of said sum $379.93 had not been used for the purpose specified in said agreement, which amount plaintiff is obliged to return to defendants.

In its reply to the counterclaim plaintiff admits that defendants are entitled to a refund of $379.93, for which sum defendants were given credit against the amount due upon entry of judgment. In its reply plaintiff alleged that no notice of loss respecting any shipment referred to in the counterclaim was filed in behalf of defendants or in behalf of the shipper as provided by the terms of the bill of lading; and further alleged that the time for filing such claims had expired before the commencement of this action.

Defendants contend that plaintiff waived the provisions of the bill of lading with respect to the requirement that claims must be filed in writing within nine months after delivery of the property (sec. 2 (b) of the bill of lading, quoted above). The alleged waiver is based on a letter dated January 12, 1940, written by plaintiff's attorney to the highway commission of Wisconsin, in which the attorney said:

"The Omaha Railway Company will be ready, and willing at any time to confer with the contractor [defendants] with the view of making proper adjustment of any claim for shortages or arising in any way in connection with these shipments."

As a further ground of waiver defendants rely upon the fact that plaintiff's station agent inspected some of the cars wherein shortage was discovered and thereupon wrote the claim department with reference to the particular shortage in the cars he inspected. In addition to the claim of waiver, defendants contend that plaintiff by its conduct is estopped from now claiming that defendants should have given notice as required by the bill of lading. In this connection defendants further claim that plaintiff's claim agent, in a conversation had with one of the defendants, told him to get his figures

together and that he, the claim agent, would come back and make an adjustment. In support of their claim of waiver and estoppel, appellants cite 10 C. J. pp. 340, 341, secs. 495 to 497. The rule there stated is not applicable under terms of the bill of lading here in question, and the decisions hereinafter referred to.

Defendants argue that the requirement, as provided in sec. 2 (b) of the bill of lading, that a written claim be filed within nine months after delivery of the property, is against public policy and in contravention of sec. 192.42 (1), Stats.; also sec. 195.38. Sec. 192.42 (1) provides:

"Every common carrier receiving property for intrastate transportation shall issue a bill of lading therefor and shall be liable to the lawful holder thereof for any loss of or injury to such property caused by it or by any common carrier to which such property may pass, and no contract, receipt, rule or regulation shall exempt the issuer from the liability hereby imposed."

Sec. 195.38, Stats., provides:

"Within three years after the delivery of any shipment of property at destination, any person, firm or corporation may submit to the public service commission, by mail or in person, any railroad or express company expense bill or receipt showing charges paid for transportation of such property by freight or express for the purpose of having the same examined with respect to the correctness of weights, rates and charges indicated thereon. Upon receipt of any such expense bill or receipt the commission shall make such examination as is necessary, and if it shall be found that any such weights, rates or charges are incorrect, the commission shall order the express or railroad company in error to refund to the person, firm, or corporation which submitted such expense bills or receipts, any over or excessive charges paid by such person, firm or corporation; provided, however, that the public service commission shall not be required to audit or examine more than fifteen such expense bills or receipts from any one shipper or consignee in any one calendar month."

Defendants cannot, in the instant action, assert any rights under the provisions of sec. 195.38, Stats., because they never sought to avail themselves of any rights they might have had under said section. As to the application of sec. 192.42 (1) its provisions in substance were enacted by ch. 326, Laws of 1913. In *Cohen v. Minneapolis, St. P. & S. S. M. R. Co.* (1916) 162 Wis. 73, 77, 155 N. W. 945, the court said:

"Where a reasonable notice is made a condition precedent to the right to recover there can be no recovery unless the required notice is given. 4 Ruling Case Law, 988 *et seq.; Clegg v. St. L. & S. F. R. Co.* 203 Fed. 971; *Hudson v. C.,St.P.,M. & O.R.Co.* 226 Fed. 38; *St. Louis & S.F.R.Co. v. Phillips,* 17 Okla. 264, 87 Pac. 470; *Missouri, K. & T. R. Co. v. Kirkham,* 63 Kan. 255, 65 Pac. 261. . . . Since plaintiff failed to give the required notice he cannot recover for the damages sustained."

At page 76 the court said:

"While the reasons for giving notice in case of death of stock may not be as great as in the case of other injury, still there are good grounds for requiring it. . . . The carrier is entitled to notice. . . . There may be other reasons. Whatever they are it is proper and lawful to provide for notice of death as well as of lesser injuries."

At page 75 the court said:

"The validity of contracts limiting the shipper's right of recovery to cases where notice of loss or injury is given pursuant to reasonable terms of contract is sustained by the great weight of authority in this country. . . . Such contract is held not to limit the carrier's common-law liability, but only to prescribe a reasonable condition precedent to the right to enforce it." To same effect see *Chesapeake & O. R. Co. v. National Fruit Products Co.* 155 Va. 438, 155 S. E. 630, 72 A. L. R. 878, and cases cited; *St. Louis, I. M. & S. R. Co. v. Starbird,* 243 U. S. 592, 37 Sup. Ct. 462, 61 L. Ed. 917; *Southern Pac. R. Co. v. Stewart,* 248 U. S. 446, 39 Sup. Ct. 139, 63 L. Ed. 350.

The latter case also treats of the question of waiver. The case involved damages sustained by virtue of injury to dairy cows delivered to the railroad company for shipment over its roads. The livestock shipping contract and bill of lading, under which shipment moved, provided in part that in case any loss or damage should be sustained, demand or claim for such loss or damage should be made by shipper on the freight claim agent of the railroad company in writing within ten days after unloading of the livestock. Otherwise, the railroad company would not be liable for any loss of or damage to said livestock from whatsoever cause, arising in excess of the declared value set forth in the contract. On the question of waiver it was alleged that the carrier had full knowledge of the injury sustained by the cattle; that they were unloaded by it en route and that it knew that five of the cows died; that immediately after unloading at destination and daily thereafter the shipper and the railroad agents were in communication relative to the damages sustained; that the nature and extent of injuries to the cows which arrived at destination alive made it impossible to determine within ten days the extent of damage sustained. Three months later a written demand was made. The trial court refused to direct a verdict in the railroad company's favor and instructed the jury as follows (quoting from page 449 of 248 U. S.):

"I charge you as a matter of law that if you believe the defendant or its agents or employees did know that five or more of the cattle died while in transit, and also believe that the defendant was negotiating with the plaintiff for a settlement of his claim, and that the defendant knew that the cattle had been injured as alleged in the plaintiff's complaint, then the plaintiff was relieved and released *from the giving of such notice of loss or injury within ten days as required by the said provisions of said contract.*"

The circuit court of appeals affirmed a judgment entered upon the verdict for the plaintiffs. That court, in the course

of its opinion, in part, said (quoting from page 449 of 248 U. S.):

"There was proof tending to sustain all the facts so alleged in the [plaintiff's] reply. We think, therefore, that the court below committed no error in instructing the jury that in view of the evidence, if they found it to be true, *the plaintiff was relieved and released from giving notice within ten days.*"

On appeal the United States supreme court, at page 449, said:

"Considering the principles and conclusions approved by our opinions in *St. Louis, Iron Mountain & Southern R. Co. v. Starbird,* 243 U. S. 592, and *Erie R. R. Co. v. Stone,* 244 U. S. 332 (announced since the judgment below), and the cases therein cited, no extended discussion is necessary to show that upon the facts here disclosed the stipulation between the parties as to notice in writing within ten days of any claim for damages was valid. And we also think those opinions make it clear that the circumstances relied upon by the shipper are inadequate *to show a waiver* by the carrier of written notice as required by the contract. The trial court erred in giving the jury the instructions quoted above; and it should have granted the carrier's request for a directed verdict."

In *Chesapeake & O. R. Co. v. National Fruit Products Co., supra,* the court held specifically that the requirement in the bill of lading that claims for loss or damage must be made in writing within the time limited as a condition precedent to liability upon the carrier was reasonable, and that *such a provision contravenes no public policy.*

The fact that all shipments in question were intrastate does not change the rule with reference to the necessity of filing a claim or claims in writing within nine months after delivery of the property, as a condition precedent to right of action against the carrier. See *Farmers Grain & Supply Co. v. Atchison, T. & S. F. R. Co.* 120 Kan. 21, 245 Pac. 734, and

cases there cited. Undoubtedly, it is the general rule that as to all shipments under a uniform bill of lading written notice of claim for loss ·or damage cannot be waived, and the carrier cannot be estopped from raising this defense. See *Southern Pac. R. Co. v. Stewart* (1919), *supra; Stern v. American Railway Express Co.* (1923) 120 Misc. 110, 198 N. Y. Supp. 531; *Stevens-Scott Grain Co. v. Chicago, R. I. & P. R. Co.* (1924) 115 Kan. 188, 221 Pac. 1117; *Schaff v. Ike Exstein & Bro.* (Tex. Civ. App. 1925) 270 S. W. 589, 591; *Jenckes Spinning Co. v. New York, N. H. & H. R. Co.* (1925) 47 R. I. 72, 129 Atl. 815; *Manby v. Union Pac. R. Co.* (8th Cir. 1926) 10 Fed. (2d) 327; *Watts v. Southern R. Co.* (1926) 139 S. C. 516, 138 S. E. 290 (cert. den. 274 U. S. 749, 47 Sup. Ct. 764, 71 L. Ed. 1331) ; *Farmers Grain & Supply Co. v. Atchison, T. & S. F. R. Co., supra* (1926) ; *Wholesale Coal Co. v. Chesapeake & O. R. Co.* (1928) 106 W. Va. 53, 144 S. E. 715; *Mt. Arbor Nurseries v. American Railway Express Co.* (1928) 221 Mo. App. 241, 300 S. W. 1051; *Chesapeake & O. R. Co. v. Martin* (1931), 283 U. S. 209, 51 Sup. Ct. 453, 75 L. Ed. 983.

In *Hanaman v. Liberty Trucking Co.* 242 Wis. 92, 7 N. W. (2d) 609, the action was to replevin a printing press transported by defendant for plaintiff. Defendant claimed a lien for freight and storage charges. The trial court held defendant was not entitled to such lien, and that plaintiff was entitled to immediate possession of the press. On appeal this court held that defendant was not only authorized, but was positively required to make the scheduled charges for storage, as well as transportation, and the lien, therefore, could not lawfully be waived or the press relinquished by the carrier until all charges were paid; that under the circumstances any promise or understanding to make no charge for storage or an omission to charge therefor would be in violation of defendant's bill of lading and tariff schedule. Referring to

certain provisions in the Motor Carrier Act of 1935, at page 97, the court said:

"In view of those provisions any promise or understanding that there was to be no charge for storage, or no lien therefor or for the freight charge, would clearly be unlawful and void. Neither any such promise or understanding, nor the doctrine of *waiver or estoppel* can be invoked when the application thereof would result in such violation." Citing *Chicago & N. W. R. Co. v. J. I. Case Plow Works,* 173 Wis. 237, 240, 180 N. W. 846; *Waters v. Pfister & Vogel L. Co.* 176 Wis. 16, 18, 19, 186 N. W. 173; *Northern Wis. P. Co. v. Chicago & N. W. R. Co.* 203 Wis. 549, 553, 234 N. W. 726; *Chicago & Alton R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033; *Southern R. Co. v. Prescott,* 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836, 839.

Defendants are bound by the provisions in the bills of lading under which all of the sand and gravel was shipped. They failed to file claims in writing for their alleged loss and damage within the time specified. The trial court properly held, in its decision on motions after verdict, that plaintiff was entitled to the full amount of its claim, less the refund of $379.93, which was apparently deducted from the amount due plaintiff upon entry of judgment.

*By the Court.*—Judgment affirmed.