RAILWAY EXPRESS AGENCY *v.* GENERAL SHOE CORPORATION.

(*Nashville,* December Term, 1954.)

Opinion filed March 11, 1955.

WILLIAM J. HARBISON, and TRABUE & STURDIVANT, all of Nashville, for appellant.

C. VERNON HINES, of Nashville, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This suit arises out of the fact that Railway Express Agency failed, in final analysis, to deliver certain goods delivered to it for shipment to General Shoe Corporation.

On September 21, 1949 Sullivan Shoe Company delivered at Providence, Rhode Island, to the Railway Express Agency, a common carrier, a carton of shoes worth $135 for shipment to General Shoe Corporation in Nashville, Tennessee. After delivery was refused by the General Shoe Corporation and return was refused by Sullivan, and after ample and repeated notice by the carrier to each of these two of the location of the shoes,

and of its intentions, these shoes were sold in May, 1950 by the carrier at public auction in New York. The $26 remaining from the purchase price after deduction of express charges and storage was tendered by the carrier to, and refused by, General Shoe Corporation.

On January 27, 1950, prior to the auction sale, General Shoe Corporation wrote the Nashville office of the carrier that if the shoes were still on hand to "deliver them to 511 Main Street (Nashville) where they would be accepted". The carrier made no reply to this letter. Nor did General Shoe make any reply to the notice which the carrier gave in early April of the intended sale at auction in May of 1950. The stipulation of the litigants is, in effect, that this letter does not amount to notice, within the meaning of the express receipt, of a claim against the carrier for failure to deliver the shoes.

It is stipulated (1) that is was not until January 3, 1951 that General Shoe gave the carrier notice that it "would enter a claim for the non-delivery of said shoes", and (2) that formal claim for such "non-delivery" was not made until March 30, 1951.

The uniform express receipt issued by the carrier in this transaction reads, in so far as pertinent here, as follows:

"As conditions precedent to recover, claims must be made in writing to the originating or delivery carrier within nine months after delivery of the property, or in case of failure to make delivery, then within nine months and fifteen days after date of shipment."

As aforenoted, the date of shipment from Rhode Island to Tennessee was September 21, 1949, prior to notice of claim for non-delivery in January and March of 1951. Thereafter General Shoe Corporation instituted suit

against Railway Express Agency "for the wrongful conversion" of these shoes.

In addition to its plea of not guilty, this carrier further plead as a bar to recovery that General Shoe Corporation "did not file a claim with defendant for its alleged loss within nine months and fifteen days from the date of shipment as required by the provisions of the Uniform Express Receipt". The Circuit Court rendered judgment in favor of the General Shoe Corporation on the ground that the Railway Express Agency had converted the shoes "in that on January 27, 1950, plaintiff wrote defendant, stating that if the carton of shoes, the subject matter in dispute, would be delivered to its plant on Main Street in Nashville, Tennessee, it would be accepted but the defendant sold the shoes at public auction on May 12, 1950." This is the letter to which reference has hereinbefore been made.

Railway Express Agency has appealed. Its contention is that it makes no difference whether the suit is on the contract or for conversion, and says that this is because the failure of General Shoe Corporation to file its claim for non-delivery within nine months and fifteen days after date of shipment, as required by the express receipt, is a failure which bars General Shoe Corporation from a recovery.

Defendant-in-error, General Shoe Corporation, says that if this were "an ordinary suit for loss or damage in shipment or *non-delivery of part shipment*", (Italics supplied), it would have been necessary for General Shoe to have filed its claim within the time provided by the express receipt, as condition precedent to recovery, but that "this suit is based on the common law right to sue for conversion" wherein, so it says, no notice of the claim for the loss is required.

■ In quoting from the above stated insistence of General Shoe Corporation emphasis has been placed upon the words "non-delivery of part shipment". This is because, in reading the contract provision in the uniform express receipt, we are unable to find therein any-thing which indicates an intention to make a distinction as to requirement for notice in case of "non-delivery of *part shipment*", on the one hand, and on the other hand, non-delivery of the *entire* shipment. The language of the receipt is that "in case of failure to make delivery" claims must be made within the time provided.

■ ■ Nor does the language of the express receipt, in so far as we can interpret it, indicate any intention to make a distinction between suits on the contract and suits for conversion in providing that as a condition precedent to recovery claim must be filed within nine months and fifteen days after date of shipment. However, the case must be ruled by Federal statutes and decisions on the subject because it was an interstate commerce shipment.

The provision in the express receipt requiring, as a condition precedent to recovery from the carrier, notice of the claim within nine months and fifteen days after the date of shipment is a provision authorized by the Carmack Amendment to the Interstate Commerce Act carried in the Federal Code at Title 49 U. S. C. A. Section 20, subd. 11. In the very early part of its reply brief General Shoe Corporation calls attention to the fact that the Carmack Amendment contains this provision:

"Provided further that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law."

That brief then says that "this suit is based on the common law right to sue for conversion"; therefore, that "notice of the claim for the loss was not required".

The provision in the express receipt as to making claim within a specified time does not deprive the holder of that receipt of any remedy to enforce a right of action given by the common law for conversion. It only requires as a condition precedent to such enforcement by appropriate remedy that the holder of the receipt shall make claim within the required time. Although there are decisions to the contrary, we think that any other construction would render inconsistent these two provisions in the Federal Statute separated by only one fairly short sentence. Read 9 A. J., pages 914-915.

Considering the wording of this particular express receipt, we feel compelled to hold that the United States Supreme Court's decision in *Georgia, Florida & Alabama R. Co.* v. *Blish Milling Co.,* reported in 241 U. S. 190, 36 S. Ct. 541, 543, 60 Law. Ed. 948, and relied upon by plaintiff-in-error, is conclusive upon this Court.

The Blish Milling Co. case, supra, is on all fours as to controlling facts with the case at bar in that (1) the bill of lading required the shipper to make his claim for loss within a certain time after a " 'failure to make delivery' " upon the part of the carrier; (2) the carrier had sold the goods delivered to it for shipment, part of it at one time, and part of it later, after consignee refused acceptance; (3) the plea of the carrier was that the shipper could not recover because it had failed to file with the carrier its claim for damages within the time required by the bill of lading after the railroad's " 'failure to make delivery' "; (4) the action was "in trover".

The United States Supreme Court, after holding that "the proper construction of the bill of lading is a Federal

question", then said that as to the "provision requiring reasonable notice of claims 'in case of failure to make delivery,' the fair meaning of the stipulation is that it includes all cases of such failure, as well as those due to misdelivery as those due to the loss of the goods", and that "the effect of the stipulation could not be escaped by the mere form of the action. The action is in trover, but, as the State Court said: 'If we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier.' "

The Court then continues as follows:

"It is urged, however, that the carrier, in making the misdelivery, converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed. (Citing cases.) We are not concerned in the present case with any question save as to the applicability of the provision, and its validity, and as we find it to be both applicable and valid, effect must be given to it."

The Trial Court in the instant case held that the provision in the express receipt with reference to making claim to the carrier within the time therein provided, in case of failure to make delivery, did not apply because "the railroad express agency had converted the shoes."

In view of the holding in the Blish Milling Co. case, supra, we feel compelled to conclude that the Trial Court erred in so holding. Accordingly the judgment of that Court will be reversed and the suit dismissed with costs adjudged against General Shoe Corporation.