**HERRIN TRANSPORTATION COMPANY,**
Appellant,

v.

**SOUTHEASTERN ELECTRIC CO. et al.,**
Appellees.

No. 13182.

Court of Civil Appeals of Texas.

Houston.

Feb. 13, 1958.

Phinney & Hallman, Carl L. Phinney, Leroy Hallman, Ralph W. Pulley, Jr., Dallas, for appellant.

Baker & Branch, Roland A. Baker, Houston, for appellees.

WOODRUFF, Justice.

Southeastern Electric Co., appellee, joined and acting through its agent, Noland Company, both being private corporations, sued Herrin Transportation Company, appellant, to recover the sum of $767.31 as the reasonable market value of one crate of electric switches. The Southeastern Electric Co., acting through its representative, on February 4, 1954, delivered to appellant, Herrin Transportation Company, the crate of electric switches along with two fiber boxes of iron and steel hardware for shipment and transportation from Houston, Texas, to appellee at Beaufort, South Carolina, for which appellant issued its bill of lading.

Herrin Transportation Company is a common carrier of general commodities operating over regular routes in Texas, Louisiana, Arkansas, and Memphis, Tennessee, and also transports freight beyond its own lines by agreements with other motor carriers. The entire shipment was misplaced in transit, but the two fiber boxes described in the bill of lading contract as "iron and steel hardware" were located and on May 28, 1954, appellant delivered the two boxes to B & M Express at Memphis, Tennessee. These two boxes of hardware were delivered to appellee ten days later at Beaufort, South Carolina, on June 7, 1954. The crate of electric switches, however, was never delivered.

Neither appellee nor its authorized representatives filed a claim under the bill of lading for the lost property until November 22, 1954, which was nine months and eighteen days after the date of the bill of lading. Appellant denied the claim on the ground that appellee failed to file it within the time provided under Sec. 2(b) of the Bill of Lading contract. Appellee thereafter instituted this suit and upon a trial before the court without a jury judgment was rendered on April 29, 1957, awarding appellee a recovery against appellant in the sum of $767.31 with interest at the rate of 6% per annum from December 1, 1954, $100.00 attorney's fees, and costs of court. From this judgment appellant has duly perfected its appeal to this Court.

Section 2(b) of the Bill of Lading contract under which this shipment was made read as follows:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed, and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. * * *"

In the trial court it was agreed and stipulated between counsel that only two questions were in dispute. They were as follows:

"A. Question of Law—It being agreed by the parties that the entire shipment was covered by one bill of lading contract and that part of the shipment was actually delivered and part undelivered, would the nine months limitation period contained in Section 2(b) of the bill of lading run from the date of the bill of lading plus a reasonable time for delivery or from the date of delivery of the partial shipment?

"B. Question of fact—At the time in question, would 18 days be a reasonable time for the delivery of a ship-

ment from Houston, Texas to Beaufort, South Carolina by motor carrier?"

Stipulations regarding the facts were entered into between counsel in the trial court which would entitle appellee to a recovery provided, however, that 18 days was a reasonable time for delivery of the shipment by motor carrier at the time in question between Houston, Texas, and Beaufort, South Carolina.

Upon request of the appellant, the trial court filed its Findings of Fact and Conclusions of Law. The first seven Findings of Fact appear to this Court to be evidentiary and, therefore, will not be set forth. Finding of Fact No. 8 reads as follows:

"8. Considering the circumstances of the particular case and the time as was necessarily convenient to transport and make delivery of the shipment in the ordinary course of business, in the light of the circumstances and conditions surrounding the transaction, this Court finds that 18 days would be a reasonable time for the delivery of a shipment from Houston, Texas, to Beaufort, South Carolina, by motor carrier at the time in question."

The following Conclusions of Law were also filed:

"1. Section 2(b) of the contract bill of lading provides for a nine months period of limitations within which a written claim must be filed as a condition precedent to recovery, the limitation period beginning to run from the time of delivery in the case of loss, damage, injury, or delay. The contract further provides in the alternative for the said limitation period to commence running from the date of shipment plus a reasonable time for delivery, in the case of failure to make delivery. Since the bill of lading and the shipment were unitary, the nine months period should commence to run from June 7,

1954, the date of the delivery of the partial shipment to the consignee.

"2. The contract bill of lading provides that 'the carrier or party in possession of any of the property herein described shall be liable as at common law for loss thereof or damage thereto, except as hereinafter provided.' In view of the stipulation by the defendant and the exceptions contained in Section 1(a) are not relied upon, and in view of the further stipulation establishing all other facts necessary to the Plaintiffs' recovery, this Court finds that the Plaintiffs herein should recover of the Defendant as a matter of law, since under the construction of the contract provisions Section 2(b) as contained in subdivision 1 of these Conclusions of Law, the written claim was timely filed.

"3. On the alternative construction of Section 2(b) it becomes necessary to inquire into the reasonable time for delivery between Houston, Texas, and Beaufort, South Carolina, at the time in question.

"4. 18 days was a reasonable time for such delivery."

By Points 1 and 2 appellant assigns as error the action of the trial court in its Conclusion of Law No. 1 that under Section 2(b) of the bill of lading the period for computing the time within which to file a written claim as a condition precedent to convey began on June 7, 1954, the date of the delivery of the partial shipment, and in holding therefore that the written claim in this case was timely filed.

■ In passing, it should be mentioned that it is now well established that a common carrier within certain limitations may incorporate as a part of its contract of carriage with its shippers a provision that notice of claim for loss or damage to goods in transit shall be given within specified times and that such notice shall be a condition precedent to the right to enforce the

carrier's liability. 9 Amer.Jur., p. 914; 13 C.J.S. Carriers § 237, p. 469.

That part of Section 2(b) of the bill of lading contract which is material here reads:

"As a condition precedent to recovery, claims must be filed in writing with the receiving * * * carrier, * * or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property * * * or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed, * * *."

Appellant asserts that under the terms of the bill of lading the time for the filing of any claim for the lost crate of electric switches, which was never delivered, was to be determined by that portion of Section 2(b) of the bill of lading which provided that "in case of failure to make delivery, then" the claim in writing must be filed "within nine months after a reasonable time for delivery has elapsed."

Appellee takes the position that the crate of electric switches was a part and parcel of the unit of three boxes, including the two fiber boxes of iron and steel hardware, which was shipped under the terms of the one bill of lading and therefore, by reason of the delivery of the two fiber boxes of iron and steel hardware minus the crate of electric switches on June 7, 1954, the time for filing its claim was controlled by the provisions of Section 2(b) of the bill of lading, which provided that a claim in writing must be filed with the carrier "on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property * * *."

Conceding somewhat that there is a lack of analogy, appellee in support of its position has cited several cases where the carrier has prevailed upon being sued by the shipper on the ground that no claim had been timely filed. For the most part, the courts in those cases have not been called upon to consider whether the time specified in the various bills of lading for the filing of claims should start to run from the date of delivery of a part of the shipment or after a reasonable time for delivery had elapsed because the allotted time after both dates had long since passed in those cases before any claims were filed. Consequently, the courts gave scant, if any, consideration to that issue and almost invariably pointed out that the time specified had long since expired after the partial delivery which, of course, ordinarily affords the longest possible time. United States v. Chicago, R. I. & P. R. Co., 5 Cir., 200 F.2d 263; Stevens-Scott Grain Co. v. Chicago, R. I. & P. Ry. Co., 115 Kan. 188, 221 P. 1117; Chicago, St. P., M. & O. Ry. Co. v. Kileen, 243 Wis. 161, 9 N.W.2d 616; Henderson v. National Carloading Corporation, 93 Ga.App. 716, 92 S.E.2d 593.

Appellant cites Railway Express Agency v. General Shoe Corporation, 197 Tenn. 561, 276 S.W.2d 725. There the shipper was contending that the filing of a claim was not a condition precedent to his filing suit for a failure to delivery. No such contention, of course, is being made here.

We have found no case exactly in point on the question before us. After a careful consideration of the provisions of Section 2(b) of the bill of lading, we have concluded that inasmuch as the crate of electric switches was separate and apart from the two fiber boxes of iron and steel hardware, it cannot be said that it was such an integral part of the whole shipment that the delivery of the two fiber boxes of iron and steel hardware could in any wise warrant the conclusion that the whole shipment covered by the bill of lading was being delivered. Neither is there any ground upon which it can be reasoned that there was a delivery of the property contained in the crate of electric switches at the time the two fiber boxes of iron and steel hardware were delivered. As a separate entity the crate of electric switches simply remained undelivered.

As a matter of law, therefore, there was never a delivery of the crate of electric switches and consequently the time within which appellee could file his claim for the failure to make delivery thereof was within nine months after a reasonable time for delivery had elapsed after February 4, 1954, the date of the bill of lading.

The trial court, therefore, erred in holding, as a matter of law, that the nine months period for the filing of a claim for the failure to make delivery of the crate of electric switches commenced to run on June 7, 1954.

Appellant contends by Points 3 and 4 that the trial court erred in making Findings of Fact and Conclusions of Law that 18 days was a reasonable time for delivery of property between Houston, Texas, and Beaufort, South Carolina, because they are not supported by any competent evidence and are contrary to the overwhelming preponderance of the evidence.

In this connection appellant also asserts error on the part of the trial court in making Fact Findings Nos. 3, 4, 6 and 7. As heretofore stated, we have disregarded them as being immaterial and therefore they could not form the basis for any reversible error. These findings are to the effect that Cooper Motor Lines, Inc. was an irregular carrier; that Beaufort, South Carolina, is not served by a regular motor carrier serving east-west approaches; that 10 to 16 days would be a reasonable time for delivery by motor carrier between Memphis, Tennessee, and Beaufort, South Carolina; and that 4 to 6 days would be a reasonable time for delivery by motor carrier between Houston, Texas, and Memphis, Tennessee. These are all evidentiary findings, not in conflict with the ultimate issue, and are wholly immaterial and can form no basis for a reversal of the case. Andrews v. Key, 77 Tex. 35, 13 S.W. 640; Plaza Co. v. White, Tex.Civ.App., 160 S.W. 2d 312, error refused.

We now pass to a consideration of appellant's Points 3 and 4 as they may apply to the trial court's Finding of Fact No. 8 and Conclusion of Law No. 4, to the effect that 18 days was a reasonable time for delivery of a shipment by motor carrier between Houston, Texas, and Beaufort, South Carolina, in February, 1954.

It was stipulated between the parties that the shipment was billed on February 4, 1954, in Houston, and the freight bill was received in Memphis, Tennessee, on Trailer No. 717 on February 7, 1954. The entire shipment was found to be short at Memphis and two of the pieces were found in New Orleans and then forwarded to Memphis and interchange was made with Southeastern Truck Lines on March 3, 1954, which took it to Atlanta, Ga. Being unable to find a carrier there to handle the shipment, Southeastern returned it to the appellant Herrin. On May 28, 1954, it was placed with B & M Express at Memphis, and it being admitted there was no direct service out of that city to Beaufort, South Carolina, it was necessary to use three carriers beyond Memphis to Beaufort, they being B & M Express, Alabama Motor Lines, and Cooper Motor Lines, Inc. The partial shipment, excluding the crate of electric switches, was made to Southeastern Electric Company in Beaufort, South Carolina, by Cooper Truck Lines on June 7, 1954.

Appellee offered as a witness Mr. A. Paul Blanke, who had been employed by the Peden Iron & Steel Company as a superintendent and assistant traffic manager for fifteen years and who had taught Transportation at The University of Houston for eight or nine years. His duties where he worked were varied, he said, in that he had charge of all rates and routes, supervised payment of all freight charges, handled all interstate commerce matters for the company, as well as import and export shipments; that Peden Iron & Steel Company is a steel fabricator and a wholesale hardware merchant, doing business primarily with customers in Louisana and Texas but selling

any place elsewhere. He further testified that his employer shipped to all parts of the United States by selling to gas pipeline companies who had offices in Houston or other points in Texas, and that occasionally they solicited business in other states on big jobs by sending salesmen. He said that he had testified in Interstate Commerce Commission hearings in connection with freight movements between Houston and Birmingham, but not in any southeastern section such as South Carolina. Although he was aware, so he testified, of tariffs generally in effect between Houston and Beaufort, South Carolina, and having had occasion to check the directory and tariff, it was indicated that there was no regular route carrier serving Beaufort, South Carolina, except a north and south carrier. The witness then explained the difference between a regular and an irregular route carrier, the gist of which was that the former maintains a regular schedule and the latter does not, only making deliveries when he has freight warranting the trip. In his opinion, he said, it would be beyond anybody's ability to say what the outer limit of time for delivery by an irregular carrier would be. Generally speaking, irregular route carriers do not maintain regular service between any points and their service is very unsatisfactory.

He did not remember shipping to Beaufort, South Carolina, but from time to time, so he stated, shipments were made by Pedens to Dumbarton, South Carolina. On the assumption that an irregular carrier was involved in the chain of carriers between Memphis and Beaufort, South Carolina, he testified that he did not think 18 days was an unreasonable time for delivery between Houston, Texas, and Beaufort, South Carolina, although he would not say that 18 days was a reasonable time over a route covering 700 miles with only regular route carriers being involved.

Mr. Andrew J. Bruna, who had been Herrin Transportation Company's claim agent for about 15 to 17 years, was also called as a witness. He testified that he had denied the claim upon which this suit was based and that he thought 18 days would be an unreasonable length of time for a shipment between Houston, Texas, and Beaufort, South Carolina. He stated that he was not qualified to testify about tariffs, but that he was qualified to testify on traffic conditions between Houston and Beaufort, although he would not tell the court his knowledge was superior to that of Mr. Blanke's. He would estimate, so he testified, based on his experience in tracing shipments from time to time in South Carolina, that a reasonable time in which to make a delivery of a shipment between Houston and Beaufort would be 6 to 8 days. In connection with his estimate it should be observed, however, that he also testified, "As far as he knew" all of the carriers were regular carriers although he admitted that he had never checked the tariff and did not know whether there was a regular or irregular carrier into Beaufort, South Carolina.

It is of some significance, we think, that the proof failed to show how long the partial shipment of the two boxes of iron and steel hardware, after being located in New Orleans, was held in Memphis, Tennessee, after arriving there and before being delivered on March 3, 1954, to Southeastern Truck Lines, the carrier that moved it to Atlanta, Ga. Neither is it shown how long it was held by appellant upon its second arrival in Memphis after being returned there by Southeastern from Atlanta before it was delivered on May 28, 1954, to the B & M Express. Neither was it conclusively established that any or all of the three carriers between Memphis, Tennessee, and Beaufort, South Carolina, were either regular or irregular carriers although Mr. Blanke's testimony was to the effect that some, if not all, of them were irregular carriers, while it was Mr. Bruna's opinion that they were all regular carriers. It should be observed also that Mr. Blanke was not shown to

have been in anywise connected with appellee, he having been brought in to testify by subpoena; whereas, Mr. Bruna was not only the appellant's employee but the claim man who had handled this matter. Moreover, there was no testimony offered which showed the actual time in which any shipment had been made from Houston, Texas, to Beaufort, South Carolina, by motor carrier without being interrupted by a shipment lost in transit.

 What constitutes a reasonable time for the delivery of a shipment by a common carrier of freight depends upon the facts and circumstances of each case. In 10 C.J., p. 286, Carriers, § 407, it is stated:

"The law does not attempt to fix by rule what is a reasonable time. What is a reasonable time is not susceptible of being defined by any general rule, but the circumstances of each particular case must be adverted to in order to determine what is a reasonable time in that case. The mode of conveyance, the distance, the season of the year, the character of the weather, the ordinary facilities for transportation, and an unusual rush of business, if there was such, are to be considered in determining whether in the particular case there has been an unreasonable delay." See also 13 C. J.S. Carriers § 194.

This rule was expressly approved in Payne v. Smith, Tex.Civ.App., 268 S.W. 243, 244, no writ history. That was a suit to recover from the carrier the value of a case of shirts shipped to plaintiffs at Wichita Falls, Texas, from South Bend, Indiana, which the plaintiffs contended was never delivered to them. The shipment was made September 10, 1919, and under the terms of the bill of lading a claim based upon a failure to make delivery had to be filed within six months after a reasonable time for delivery had elapsed. Plaintiffs did not file their claim with the defendant until April 30, 1920, which

which was one month and 20 days more than the six months period. There was considerable testimony offered to show the time that some shipments took from South Bend to Wichita Falls. Some arrived in 15 days, others in 30 days; some would come through in 8 days, and it might take another shipment six weeks "if it should get lost." The testimony also showed that during the early part of the year there was great freight congestion and uncertainty with reference to shipments. In affirming the judgment of the trial court allowing the plaintiff a recovery against the carrier where the same defense was offered as in this case, the court in part said:

"When the facts and circumstances attending a particular shipment are in evidence, it is ordinarily a question of fact to be determined from a consideration of the same what a reasonable time for the delivery of such shipment would be. American Railway Express Co. v. Roberts [28 Ga. App. 510, 111 S.E. 744], supra; Moore Bros. v. American Railway Express Co., 181 N.C. 300, 107 S.E. 6. While the usual and customary time required for the transportation and delivery of similar shipments is prima facie reasonable, the fact that the time occupied in transporting and delivering a particular shipment is unusual is not necessarily conclusive that such time was unreasonable. 10 C.J., p. 287."

The question of what is a reasonable time in which delivery of a shipment should be made by a carrier at a certain time between points is always an ultimate issue to be decided by the trier of the facts. The testimony of witnesses regarding the ordinary time that like shipments have required in the past and the opinions of others who have had experience are, at best, only evidentiary. In this connection, the Eastland Court of Civil Appeals, in Texas & P. Ry. Co. v. Bufkin, 46 S.W.2d 714, 717, writ dismissed, where the car-

rier was being sued for failing to deliver a shipment within a reasonable time, said:

"Appellant objected to the testimony of plaintiff and one or two other witnesses, to the effect that the reasonable, usual, and ordinary time that shipments such as the one in question required from Snyder to Fort Worth was from twenty-one to twenty-three hours. The objection was that the testimony was a conclusion and opinion of the witness upon a mixed matter of law and fact, and the opinion of the witnesses therefore constituted an invasion of the province of the jury. The objection was not good as to that part of the testimony to the effect that the usual and ordinary time was from twenty-one to twenty-three hours. Baker v. Nance Bros., supra, and authorities there cited. The witnesses showed themselves qualified to testify as to the usual and ordinary time as matters of fact within their knowledge. This was proper evidence upon the only real issue involved; namely, the reasonableness of the time employed in the transportation of the shipment."

■ The case of Payne v. Smith also announced another salutary rule which we believe is applicable to this case, and that is when a judgment has been rendered in a trial without a jury every reasonable presumption will be indulged upon appeal in favor of the Findings of the trial court, and in passing upon the sufficiency of the evidence to sustain the Findings of the court the evidence will be considered in the light most favorable to those findings. See also Rogers v. Mowry, Tex.Civ.App., 183 S.W.2d 737, no writ history; 3–B Tex. Jur., p. 457, Appeal and Error, § 941.

■ In our opinion there was ample testimony to raise the issue of fact in this case, and the evidence supported the Fact Findings of the trial court to the effect that 18 days was a reasonable time in which to make delivery of the shipment by motor carrier from Houston, Texas, to Beaufort, South Carolina. This Fact Finding, therefore, established the condition precedent to appellees' recovery under that part of Section 2(b) of the bill of lading providing that in case of a failure to make delivery, a claim in writing must be filed within nine months after a reasonable time for delivery had elapsed from the date of the bill of lading which in this case was February 4, 1954. By adding 18 days, the reasonable time for delivery as found by the trial court, to February 4, 1954, the filing of appellees' claim on November 22, 1954, was within the nine months period and therefore appellees established their right to a recovery irrespective of the learned trial court's erroneous construction that was placed upon the terms of the bill of lading which would have deferred the beginning date for the running of the nine months period to June 7, 1954. We, therefore, overrule appellant's Points 3 and 4.

There being no reversible error in the trial court's judgment, the judgment is affirmed.